# Richmond

## CULPEPER NATIONAL BANK, OF CULPEPER, VA., INC., V. WALTER & WALTER.

### March 13, 1913.

1. PRINCIPAL AND AGENT—*Power of Agent—Application of Payments.*— An agreement between a national bank examiner and a customer of the bank that a part of a fund deposited with the bank by its president to secure his indebtedness shall be applied to a debt due the bank by the customer, for which the president of the bank was ultimately liable, is not binding on the bank, in the absence of any evidence that the examiner had authority to make the agreement, or that it was ratified by the bank, or that it was informed that it had been made.

2. BANKS AND BANKING—*Overdrafts—Fraud of Officer—Knowledge of Bank—Liability of Customer.*—Where a customer of a bank has been permitted to overdraw his account by the direction of the president, who was actively managing its affairs, and subsequently the customer gives his note for the amount, which is accepted by the bank in the usual course of business, without any knowledge of the fact that the overdraft was for the purpose of paying a debt due to the customer by the president, the debt thus created is the debt of the customer, and he is not released from its payment, though the president promised him to pay the note, and was ultimately liable to the bank for its payment.

3. PAYMENT—*Application of Payment.*—Where a debtor owing several debts makes a payment he has the undisputed right to make such application of it as he sees fit. If he fails to exercise his right, the creditor may then make the application, but if the power be not exercised by either, it becomes the duty of the court to make it, and in its performance a sound discretion is to be exercised.

4. PAYMENTS—*Application by Debtor—Change of Application.*—Where, upon an accounting, the president of a bank is found to be largely indebted personally to the bank upon enumerated items, and delivers to the bank cash and securities to be applied as the bank thinks best to *his* indebtedness, this is an application by him of his payments to his personal debts ascertained by said

accounting, and he cannot thereafter direct the application to be made in part to a debt for which he was only indirectly liable, not taken into consideration on the accounting, and for which the bank was ignorant of his liability. Whether or not the right to direct the application of payments reverts to the debtor if the creditor delays to make the application beyond a reasonable time need not be decided in this case.

Error to a judgment of the Circuit Court of Culpeper county in an action of debt. To a judgment for a small part of the amount claimed, the plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Grimsley & Miller,* for the plaintiff in error.

*Gibson & Nottingham* and *Waite, Perry & Jeffries,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

The Culpeper National Bank, of Culpeper, Va., brought this action of debt against E. T. Walter and E. A. Walter, partners, trading as Walter & Walter, to recover the principal sum of $2,500, with interest, alleged to be due and owing by them on the following negotiable note, to-wit:

"Culpeper, Va., April 4th, 1906.
"$2,500.00.     On demand after date we promise to pay to the order of Culpeper Nat. Bank, without offset, Twenty-five hundred dollars, with interest.
"For value received, negotiable and payable at the Culpeper National Bank, of Culpeper, Va.

\*        \*        \*        \*        \*        \*

"Credit the Drawer.
"Due, Call Loan.
"(Signed)    Walter & Walter."

Endorsements on the note show interest thereon to have been paid annually up to July 1, 1909.

The defendants pleaded the general issue to the action and filed three special pleas in writing; the substance of these pleas being that before the commencement of this suit the defendants paid to the plaintiff the sum of money in the declaration demanded. Accompanying one of the special pleas is the following statement in writing: "The defendants say that S. R. Smith, prior to the date mentioned in the foregoing plea, was indebted to these defendants in a sum of money equal to that demanded in the declaration, and being so indebted deposited with the plaintiff before that time a large sum of money, to-wit: The sum of ten thousand dollars, out of which he had the right to and did direct the said plaintiff to pay the sum of $2,500.00, which was the amount due on said note sued upon, if anything was due thereon."

Upon the hearing of the cause, upon the evidence and under instructions of the court as to the law applicable thereto, the jury rendered a verdict in favor of the plaintiff in the sum of thirty dollars, with interest thereon from September 10, 1909; whereupon the plaintiff moved the court to set aside the verdict and grant it a new trial on the grounds (1) that the jury had been misdirected by the instructions of the court, and (2) because the verdict was contrary to the law and the evidence, which motion the court overruled and entered its judgment in accordance with the verdict of the jury, to which ruling the plaintiff duly excepted and applied for and obtained this writ of error.

During the progress of the trial in the court below, the plaintiff took a number of exceptions to the action of the court in excluding evidence offered by the plaintiff and in granting instructions offered by the defendants, and in refusing to grant or in modifying instructions offered by

the plaitiff, but we will not find it necessary in disposing of the case here to refer especially to these exceptions.

In the statement of the facts of the case following, we shall, for convenience, speak of the plaintiff in error as the bank, and the note sued on as the Walters' note.

It appears that S. Russell Smith, for a number of years prior to April, 1909, was the president and chief executive and managing officer of the bank; that about November, 1908, Francis I. Coats, U. S. bank examiner, discovered that Smith was indebted and liable to the bank for a large sum of money, of which liability the bank had no prior knowledge, and afterwards John J. Davies, who had then recently been employed as the bank's assistant cashier, discovered other large indebtedness and liability of Smith to the bank, which, together with other indebtedness and liability before known, aggregated, as of March 1, 1909, about one hundred thousand dollars. Upon the discovery of this large indebtedness of Smith to the bank, Coats and Davies reported it to the bank's directors, who took up the matter with Smith, with the view of securing some settlement of, or security for, said indebtedness; and in a conference between Smith and certain of the bank's directors, Davies, and the bank's attorney, there was then presented to Smith the demands of the bank against him, amounting (as stated above) to about $100,000, and upon practically all of said demands Smith then admitted his liability. About the time of this conference Smith turned over to the bank about $8,000 of notes of the Lunenburg Lumber Company, $25,000 in cash and $10,000 in the notes of Charles Forbes, with directions that the bank was to apply said cash and the proceeds of said notes when collected to the debts of Smith to the bank, and by express agreement, according to the weight of the evidence, the application was left entirely with the bank, Smith to have no right to direct the application of any of the said

money or the proceeds of said notes to any particular debt of his to the bank, but the bank was to apply the same to such items of his indebtedness as the bank might see fit.

It further appears that the bank at once discounted the Lunenburg Lumber Company's notes turned over to it by Smith, and gave his account credit by the proceeds thereof, as well as the said $25,000 of cash, and then charged off against this credit certain debts of Smith, and reserved in its hands the Forbes notes for $10,000 for collection and future application.

If further appears that the cash and collateral turned over by Smith to the bank did not discharge his indebtedness to the bank by about $60,000, and on demand of the bank Smith executed a deed of trust to John B. Miller, trustee, on certain real estate in and near the town of Culpeper, Va., which deed of trust provided for the sale of said real estate and the application of the proceeds therefrom, *first,* to the payment of notes held by the bank, of which Smith was the maker; *second,* to the payment of notes held by the bank on which Smith was endorser, and *third,* to the payment of any other indebtedness of Smith to the bank. At the time of the execution of said deed of trust, the estimated value of the real estate thereby conveyed was $12,000, but the bank only realized about $10,000 from the sale thereof.

The transactions just related were had during the period from March 1, 1909, to April 1st of the same year, and Smith retired from the presidency of the bank in April, 1909, but had not participated in the management thereof for some months prior thereto; the said John J. Davies, the bank's assistant cashier, having been the managing officer from about December, 1908. Upon assuming the management of the bank, Davies found among its assets the Walters' note here sued on, which was carried by the bank on its books under the head of "Time Loans," loans

on which the bank collected interest on January and July 1st of each year. The interest on the Walters' note to January 1, 1909, had been paid by Smith to the bank's teller, but the bank did not know by whom this interest was paid, and only knew that it had been paid up to that date; and a short while prior to July 1, 1909, the bank notified, through the mail, Walter & Walter that interest on their note (the Walters' note) would be due and payable on the 1st day of July following. In response to said notice E. A. Walter came to the bank and informed its assistant cashier, Davies, that Walter & Walter thought the note in question had long since been paid off by Smith, as he had promised so to do. E. A. Walter then informed Davies of the circumstances under which the note was given, as follows: Walter & Walter were contractors and builders, and some time in the year 1905 they entered into a contract with Smith to build and repair certain buildings upon the property of the wife of Smith. As this work progressed Walter & Walter would call upon Smith, who was then the bank's president, executive and managing officer, for payments on their contract. When called upon Smith would direct Walter & Walter to draw their checks upon the bank (at which they had no balance), saying to them that he would have the checks cashed. In pursuance of this arrangement Walter & Walter did draw checks, which were cashed at the bank under the directions of Smith until their account had run up to more than $2,500, Smith telling Walter & Walter all along that he would protect their checks. After Walter & Walter had overdrawn more than $2,500, they were told by the bank's teller that he would no longer cash their checks, and that they must make some arrangements to settle their overdraft. Thereupon Walter & Walter went to Smith in regard to their overdraft, who told them that the way to arrange it was for them to execute their notes for the

amount of their overdraft; that he (Smith) as president of the bank would have then discounted and the proceeds placed to their credit and the overdraft charged off against such proceeds; that he, Smith, would thereafter pay such notes and thereby discharge his personal indebtedness to Walter & Walter arising out of his contract for buildings, etc., upon his wife's property. Following this suggestion, Walter & Walter executed the Walters' note here sued on and another for about $480, which were discounted at the bank and the overdraft of Walter & Walter charged off against the proceeds. Thereafter Smith paid the semi-annual interest on said notes, and according to their statement Walter & Walter thought he had paid the principal as he promised; yet they admitted having received notice of the time when interest thereon was required to be paid.

Upon this statement being made by Walter & Walter, the bank's assistant cashier informed them that he would have to look to them for the payment of the notes, and they promised to pay the same.

It very clearly appears—in fact, Smith so testified—that the bank knew nothing in March, 1909, as to the circumstances under which the Walters' note (for $2,500) came into its possession, and when Smith turned over to it the cash and securities before mentioned to be applied to his indebtedness to the bank, no claim on account of this note was presented to him as a claim against him, the bank having assumed that the note had come into its possession in the ordinary course of the business of banking.

In September, 1909, the bank was again visited and examined, as provided by United States statutes, by said Coates, U. S. bank examiner, who by reason of his former visit and examination was partially familiar with the indebtedness of Smith to the bank, and upon being told by Davies what Walter & Walter had said in regard to the $2,500 note in question, and Smith's connection therewith, and

also being given other information with respect to Smith's liability to the bank, he made up a statement from the bank's books showing what he considered to be Smith's remaining liability and indebtedness to the bank, after the application of the Lunenburg Lumber Company's notes and the $25,000 in cash to the payment thereof had been made, and omitting certain items which Smith or his friends had otherwise arranged, which statement showed a balance of $35,608.39 of principal, made up, it would seem, by debts for which Smith was liable, which were regarded as doubtful or worthless, and from which balance Coates deducted the $10,000 of Forbes' notes turned over to the bank in March, 1909, and the estimated value of the real estate conveyed by Smith to Miller to secure his indebtedness to the bank, which real estate he estimated at $12,000, leaving a balance of $13,359.64 of doubtful or worthless debts due the bank. In addition Coates listed other debts amounting to $21,091.90, for which Smith was liable to the bank and which Coates regarded as solvent, in which list was included as a liability of Smith to the bank the sum of $2,980, the amount of overdraft which Smith had permitted Walter & Walter to make at the bank, and to cover which they had executed the note for $2,500 (here sued on), and another for $480, upon which last named note judgment was obtained by the bank. Coates afterwards presented said statement to the attorneys for Smith in the presence of the bank's regularly retained attorneys, and a few days later, September 10, 1909, Smith wrote the bank questioning the correctness of items charged against him amounting to $12,108.73, among which was the item of $2,980 of Walter & Walter's overdraft on the bank, but added: "Relative to the Walter & Walter note charged as amounting to $2,980, I desire to state that I only owe them about $2,500, and I have no objection to such application, and now request out of the

funds in your hands belonging to me the sum of $2,500 be applied to this note."

One of Walter & Walter's counsel, who was also counsel for Smith, testifies that he had a conversation with Coates about the time of the letter just quoted from, and requested Coates to apply a portion of the $10,000 of Forbes' notes, or the proceeds thereof, still in the possession of the bank, and which had not been applied to any special debt or debts of Smith, to the discharge of the Walters' note, and that Coates promised so to do, but it appears that the bank never made any response to the letter of Smith, nor did Coates ever communicate to the bank any conversation which he may have had with Walter & Walter's counsel in which he promised to apply the money of Smith in the bank's hands for the payment of Smith's own debts to the payment of Walter & Walter's indebtedness to the bank.

There was no special application made by the bank of the $10,000 of Forbes' notes or of the estimated value of the real estate conveyed to Miller, trustee, until December, 1909, when with the advice of Coates certain debts of Smith to the bank, which did not include the Walter & Walter overdraft and other debts of Smith, were charged off against this $10,000 and $12,000, the estimated value of the real estate conveyed to Miller, trustee, which still left $6,526.11 for which Smith was liable to the bank, which there was no prospect of collecting from Smith, and for which there was no collateral or security. Coates, as bank examiner, demanded that this loss be made good at once, or he would report Smith's conduct in the management of the bank to the United States Department of Justice, and stated that unless the bank's directors contributed the said amount of $6,526.11, he would assess the bank's stock to make up such loss; thereupon, the bank's directors contributed the said sum of $6,526.11 to cover the loss as reported by Coates, which amount so contributed by

the directors was in addition to about $18,000 theretofore contributed by them for a like purpose.

The Walters' note not having been paid from the assets of Smith, and Walter & Walter having failed or refused to pay the same, this suit was brought and resulted, upon a trial thereof, as has been above stated.

There is little or no conflict in the evidence, and it will be seen from the facts above stated that however the cash and notes placed in the bank's hands by Smith for the payment of his indebtedness were applied, there would remain a large balance due the bank by him.

The contention of the plaintiff bank in the trial court was, first, that the note sued on was the debt of the defendants, Walter & Walter, and not the debt of Smith, nor did it become Smith's debt, even though he was liable to the bank for allowing the defendants to overdraw their account with the bank to the amount of $2,980, and the bank or a United States bank examiner asserted a claim of liability against said Smith on account of such overdraft, and he admitted his liability therefor; and that the bank took the note in question without knowledge of any transactions between Smith and the defendants, and that Smith had no right to apply or direct application of any funds in the bank's hands, placed there to pay his own debts to the bank, to the payment of said note, the debt of the defendants.  Second: That even if the debt sued on was the debt of Smith, he had no right to direct application thereto of any funds in the bank's hands, if such funds had been turned over to the bank under an express contract that the bank should have exclusive direction and right to apply the same as it saw fit.  Third: That F. I. Coates, U. S. bank examiner, was not the agent of the bank to make any contract with Smith on behalf of the bank, and if he undertook to make such contract as is asserted by the defendants with respect to the Walters' note, the same was of no binding effect upon the bank.

On the other hand, the contention of the defendants was that though it be conceded that Smith gave the bank the right to make a general application of his assets, which he turned over to the bank in payment of such obligations of his to it as the bank saw fit to apply them to, still in the absence of an application thereof by the bank for over six months, namely, from March 1 to September 10, the right to make the application thereof was restored to Smith, and he having by his letter of September 10, 1909, directed $2,500 of the funds then remaining in the hands of the bank to be applied to the Walter debt, that debt was to that extent paid; and, second, whether this right existed or not it was agreed between the bank and Smith in September, 1909, that this application should be. made, and that agreement, made through F. I. Coates, who was representing the bank in that matter, is binding upon it, and the written direction of Smith in his letter of September 10, 1909, was an application thereof agreed to by the bank, through its agent Coates.

The court in its instructions to the jury rejected the views of counsel for the plaintiff bank as to the law of the case upon the facts which the evidence proved or tended to prove, and adopted the views contended for by counsel for the defendants.

We are of opinion that there is no merit in the contention of the defendants that Coates, the bank examiner, was the agent of the plaintiff bank, clothed with the authority to agree for the bank with the attorneys for the defendants on or about September 10, 1909, or at any other time that $2,500 of the money which the bank had in hand, placed there by Smith to pay his indebtedness to the bank, should be applied to the payment of the Walters' note. There is no evidence whatever in the record to show any such authority given by the bank to Coates, or that the bank ever ratified such an agreement, or was advised

that it had been made. Coates' only connection with the bank's affairs was in his official capacity as United States bank examiner, charged with the duty of inquiring into and making report of the status of the affairs of the bank and of Smith's conduct in the management thereof to the United States Department of Justice. He had not listed the Walters' note as a debt of Smith to the bank, but only listed the overdraft of Walter & Walter to the amount of $2,980 as a liability upon Smith to the bank—that is, a liability upon Smith in the event the bank failed to collect the money from Walter & Walter. The fact that Davies, cashier and managing officer of the bank, recognized that in the adjustment of Smith's affairs with the bank Coates' authority was superior to that of Davies; nor the fact that the letter of Smith to the bank of September 10, 1909, was turned over by an attorney for the bank to Coates "to be handled by him," has no probative force as to whether or not Coates was the agent of the bank to bind it by the alleged agreement that a part of the money the bank had in hand for the payment of Smith's indebtedness to it should be applied to the payment of the Walters' note, which the bank had acquired in the due course of its business. Smith in testifying in this case refers to Coates as having been, some time after August 24, 1909, in Culpeper "conducting the investigation and adjustment of his (Smith's) indebtedness to the bank, and representing the bank in connection therewith," but this is only a bare declaration on his part without the statement of any fact going to show that Coates was the agent of the bank, clothed with authority to make an agreement on its part with him or his attorneys such as is claimed Coates made with respect to the Walters' note.

The remaining question presented is whether or not, in the circumstances narrated above, Smith had on September 10, 1909, the right to require the bank to apply $2,500 of the money it then had in hand, placed there by Smith

for the payment of his own indebtedness, to the payment of the Walters' note. That the arrangement between Smith, as the bank's president, and Walter & Walter, the defendants, pursuant to which the former directed and allowed the latter to check upon the bank to the amount of $2,980, and accepted and discounted notes therefor out of the bank's money, and applied the proceeds of such notes to balance the overdraft, and promised the defendants that he would pay the bank one of said notes, amounting to $2,500, and thus discharge his debt to the defendants, does not release the defendants from liability to the bank on the note in question, is settled by the decision of this court in *Baker et als* v. *Berry Hill Mineral Springs Co.*, 112 Va. 280, 71 S. E. 625. In that case Smith, for the purpose of promoting an enterprise in which he was personally interested, loaned to the Misses Baker about $4,500 of the bank's money, taking from them their notes therefor payable to the bank, with the understanding that he, Smith, was to pay these notes out of the proceeds of certain stocks of the Misses Baker which he had guaranteed to sell at par within a certain time; and it was held that Smith in such transaction was not the agent of the bank; that the bank took said notes free from any promise Smith had made in regard to his paying the same, and without notice of any fraud Smith may have perpetrated to secure the notes. In that case, as in this, had the notes sued on proved worthless, there would have been a liability on Smith to the bank for a misappropriation of its funds to his own private use.

In *Pope* v. *Transparent Ice Co.*, 91 Va. 79, 20 S. E. 940, the principles of law applicable to the subject of the application of payments are stated in the opinion by Keith, P., without reference to authorities to support them, as they are universally accepted. The first of these principles is where a debtor makes a payment, he has the undisputed right to make such application of it as he sees

fit; second, if the debtor fails to exercise his right the cred-
itor may then make the application, and if the power be
exercised by neither, it becomes the duty of the court to
make it, and in its performance a sound discretion is to be
exercised.

In the case now before us, the debtor, Smith, when he in
March, 1909, turned over to his creditor, the bank, certain
notes and cash, he did exercise his right to direct the ap-
plication of the cash and proceeds from the notes turned
over by him, agreeing at the time with the bank that the
cash and proceeds of the notes should be applied to *his*
indebtedness to the bank as it saw fit.

It is not, however, contended on behalf of the defend-
ants that Smith did not in fact direct the application of
said cash and the proceeds of the notes turned over by him
to the bank, but the contention is that no special agree-
ment was entered into between the parties, and, therefore,
the case is as though Smith had failed to direct the appli-
cation, from which fact, under the law, an implied agree-
ment arose between the parties, as effectual and binding
as if it had been express, to the effect that though Smith
had said when he turned over the cash and notes to the
bank, "take this and apply it to my debts as you see fit,"
"the law reads into this agreement, whether express or im-
plied, the provision that the application must be properly
made, else the right to make the application is restored to
the debtor" (Smith).

To sustain the latter part of this contention, the case of
*Hill & Braxton* v. *Sutherland,* 1 Wash. (1 Va.) 128, is
alone relied on. In that case there was no positive evi-
dence that Braxton directed the application of the money
paid and, therefore, the case was discussed and decided
solely upon the doctrine of the application of payments,
the opinion saying that the question was, how should the
payments be applied under the circumstances of the case.
The case in judgment is very different, in that Smith not

only directed the application of the notes and cash turned over by him to the bank, but according to the evidence of three witnesses, testifying for the bank, and not denied by Smith, he agreed with the bank that it was to take the notes and cash he turned over and apply them to the payment of *his* indebtedness to the bank as it saw fit.

It is to be observed that when Smith, on the 10th of September, 1909, sought to have the bank apply the $2,500 of the assets he had turned over to it for the payment of his own indebtedness to the payment of the Walters' note held by the bank and unpaid, payment of this note had not been demanded of Smith by the bank, nor was the indebtedness of Smith to the bank, growing out of his mismanagement of its affairs, or the nature thereof then ascertained, but was only a subject of investigation. Under these circumstances, upon neither reason nor authority had Smith the right to have $2,500 of the assets turned over by him to the bank for the payment of his debts to it applied to the payment of the Walters' note.

We do not by anything said in this opinion mean to hold, nor is it necessary for us under the facts and circumstances of the case to hold, that if a creditor holding more than one debt against his debtor delays for an unreasonable time to apply payments made to him on account of such debts, his debtor, in the absence of a special agreement between the parties, would not have the right to direct the application of such payments. What would be considered an unreasonable delay in the application of payments would have to be determined by the facts and circumstances of the particular case. *Lingle* v. *Cook's Admr.,* 32 Gratt. (73 Va.) 262.

It follows that the judgment of the circuit court here complained of has to be reversed, and the cause remanded for a new trial in accordance with this opinion.

*Reversed.*