## WESTERN GERMAN BANK v. NORVELL.

(Circuit Court of Appeals, Fifth Circuit. January 24, 1905.)

No. 1,345.

1. BANKS—COLLECTION OF DRAFT WHEN INSOLVENT—RECOVERY OF PROCEEDS FROM RECEIVER.

A bank which, although known by its officers to be insolvent, received a draft for collection without disclosing its insolvency to the owner, collected the same and mingled the proceeds with its own funds, remitting to the owner its own draft, which was not received until after the bank was placed in the hands of a receiver, was guilty of fraud, and the proceeds of the draft, when collected, remained the property of the sender, and may be recovered from the receiver, where they can be traced into his hands; and such right is not affected by the fact that the sender gave directions that the remittance should be made in New York exchange, which was done; the exchange being protested and never paid.

2. SAME.

When a bank, known by its officers to be insolvent, collects money for a customer and mingles the same with its own funds, which to an amount larger than the sum so received go into the hands of its receiver, it is not essential to the right of the customer to recover from the receiver that he should be able to trace the identical money into the receiver's hands; but it is sufficient to show that the sum which went into the receiver's hands was increased by the amount so collected.

3. EQUITY PLEADING—ALLEGATION OF INSOLVENCY—SUFFICIENCY.

Allegations in a bill of the insolvency of a bank at the time it received and collected a draft *held* sufficient.

Appeal from the Circuit Court of the United States for the Southern District of Florida.

This is a suit in equity by the Western German Bank, a corporation under the laws of the state of Ohio, against the First National Bank of Florida, a corporation under the laws of the United States, having its place of business in Jacksonville, Fla., and Joseph W. Norvell, receiver of the latter bank. The demurrer having been sustained to the original bill, the complainant amended the bill, and a demurrer was interposed to the amended bill, which the court sustained. The complainant having declined to amend further, the bill was dismissed. The complainant thereupon appealed to this court, and assigns as error the decrees of the court sustaining the demurrers and dismissing the bill.

To make plain the questions involved, it is necessary to state the material averments of the bill and the grounds of demurrer. It is alleged that the complainant, the Western German Bank, received as a deposit from a customer a draft, signed F. T. Watson, in favor of Edward Holder, for the sum of $4,000, drawn on the Commercial Bank of Jacksonville, Fla. The complainant, on the 10th of March, 1903, forwarded the draft to the First National Bank of Florida for collection by letter, saying: "Please remit New York exchange." The First National Bank of Florida presented the draft to the Commercial Bank for payment, and the same was promptly paid. The First National Bank of Florida then sent by mail to the complainant bank its draft, dated March 13, 1903, for the sum of $3,995, on the Chemical National Bank of New York, payable to the order of the complainant, which draft was received by the complainant bank on the 16th of March, 1903, after the failure of the First National Bank of Florida, and after the defendant Norvell had been appointed receiver of the First National Bank of Florida by the Comptroller of the Currency of the United States. The complainant presented this draft to the Chemical National Bank for payment on the 17th of March, 1903, and payment was refused, because of the failure of the First National Bank of Florida, and the draft was duly protested. The First National Bank of Florida was closed on March 14, 1903, and the receiver took possession on that

date, which was before the complainant had received the draft of the Chemical National Bank. The receiver immediately instructed the Chemical National Bank not to pay the draft and other drafts of like character, and the draft has never been paid.

The following allegation is made in reference to the insolvency of the First National Bank of Florida and the title to the money sued for: "And that on the said date above mentioned, on which your orator sent the draft for collection to the said First National Bank of Florida, and at the time that the said bank collected the same, the said bank was insolvent, and that it was well known to the said bank and to its said officers that it was insolvent, and, well knowing the said facts, the said bank and the said officers neglected to disclose the same, or to inform your orator of the same, and by continuing as a bank, with open doors and otherwise, the said bank represented to your orator and all other persons dealing with it that the said bank was solvent, and that on the faith of such representations your orator believed the said bank to be solvent, and had no knowledge or suspicion or means of knowing that it was insolvent, or in danger of becoming so, and that, acting upon said representations and relying on your orator's belief in the said solvency of the said bank as so represented, your orator so delivered the said draft to the said First National Bank of Florida, and it received the same for collection for your orator as aforesaid. And your orator further alleges that it is advised, and so charges, that by reason of the matters and premises alleged in your orator's original bill, and hereinabove alleged, the said draft, when delivered as aforesaid by the said First National Bank of Florida, did not become the property of the said bank, and that your orator did not part with the title and interest of the said draft, and that it remained the property of your orator, and that the proceeds of collection of the said draft, when so collected as aforesaid, never did become the property of the said bank, or defendant as receiver thereof, but remained always and still are the property of your orator. * * *" It is then alleged that the sum of $3,995, collected by the defendant bank from the Commercial Bank on the draft forwarded to it by the complainant, is a trust fund, and that the same was held in trust by the defendant bank, and that the receiver now holds possession of the same as part of the assets of the First National Bank of Florida, and that the general creditors of the First National Bank of Florida have no interest in said sum, and that the same should be paid by the receiver to the complainant. The bill concludes with a prayer that the receiver may be decreed to pay the said sum, with interest, to the complainant as a trust fund, and for general relief.

A demurrer was filed by the defendant, and among the grounds of demurrer alleged are the following: "(1) That it appears by the said amended bill that the First National Bank of Florida was given specific directions regarding the collection and remittance of the proceeds of said draft, and that the said First National Bank of Florida complied fully with such instructions. (2) It appears by said bill that the proceeds of said collection were mingled with the funds of said First National Bank of Florida, and were not kept separate and distinct, and were not held in trust for the benefit of the plaintiff, and were not impressed with any trust character whatever. (3) That the amended bill shows that said First National Bank of Florida was regularly doing business when said draft was received and when the same was collected, and continued to do business thereafter, to wit, to the end of March 14, 1903, and to receive and pay out moneys in due course, and there is no allegation or showing that said bank was not in position to remit in cash or other regular way, and the presumption necessarily follows that it would have done so, rather than close its doors, but for the positive instructions of complainant as to the manner of remitting, and the facts to show fraud are not sufficiently set forth."

C. M. Cooper and J. C. Cooper, for appellant.

Duncan U. Fletcher, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

1. It is alleged in the bill that the defendant bank was insolvent when it received the draft for collection, and when it collected it, and when it remitted the New York exchange. The New York exchange is dated March 13, 1903, and on the next day the defendant bank and its assets were in the hands of a receiver appointed by the Comptroller. Its insolvent condition was known to the officers of the bank, and they wrongfully neglected to disclose the fact to the complainant. On the facts averred in the bill, it was a fraud on the part of the defendant bank for it to receive the draft for collection, intending to collect it and to mingle the proceeds of the collection with its general assets. The draft, therefore, and the proceeds of its collection, remained the property of the complainant bank. Richardson v. New Orleans Deb. Red. Co., 102 Fed. 780, 42 C. C. A. 619, 52 L. R. A. 67. The fact that the complainant gave directions to the defendant to remit the proceeds of the collection in New York exchange does not alter the case. These directions were given, because the complainant bank was led to believe that the defendant bank was solvent, and was doing business honestly and in good faith. It was not supposed that the defendant bank, when its officers knew it to be insolvent, would receive drafts for collection, collect them, and mingle the proceeds with its general assets, so as to knowingly subject the owners of the drafts to loss. It appears from the bill that, with knowledge of its insolvency, it received and collected this draft, mingled the proceeds of its collection with its other funds, and followed the complainant's direction as to remitting in New York exchange; but the defendant bank was placed in the hands of a receiver before the complainant received the exchange, and the exchange was protested. As the exchange was not paid to the complainant, and did not diminish the funds in the bank, or create any liability against it affecting the general creditors, it does not have any effect upon the equitable rights of the complainant. Richardson v. New Orleans Coffee Company, 102 Fed. 785, 43 C. C. A. 583.

2. The fact that the proceeds of the draft, when collected, were mingled with the other funds in the bank, does not defeat the complainant's right of recovery. When a bank receives money, it being known to its officers to be insolvent, and mingles the money with its own funds, which, to an amount larger than the sum so received from its client, goes into the hands of its receiver, it is not essential to the right of its client to recover from the receiver that he should be able to trace the identical money into the receiver's hands; but it is sufficient to show that the sum which went into the receiver's hands was increased by the amount which the bank received of its client. Richardson v. New Orleans Deb. Red. Co., 102 Fed. 780, 42 C. C. A. 619, 52 L. R. A. 67, and cases there cited.

3. In support of the third ground of demurrer, it is argued that the bill does not allege that the defendant bank was "hopelessly" insolvent. It is true that the bill does not aver in plain words the hopeless insolvency of the defendant bank. It is alleged, however, that it was insolvent, and that its insolvency was known to its officers, and that they wrongfully neglected to disclose its insolvency to the complainant, and that it received the draft for collection, collected it, and, while so insolvent, sent the New York exchange, which was dated March 13,

1903, and that on March 14, 1903, the defendant bank was placed in the hands of a receiver. These averments of the insolvency of the bank, we think, are sufficient. See St. Louis, etc., Ry. Co. v. Johnston, 133 U. S. 566, 10 Sup. Ct. 390, 33 L. Ed. 683, reversing the decree of the Circuit Court, 27 Fed. 243.

The decree of the Circuit Court, dismissing the bill, is reversed, and the case remanded, with instructions to overrule the demurrer.