𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## BAKER AND OTHERS V. BERRY HILL MINERAL SPRINGS COMPANY AND OTHERS.

June 8, 1911.

1. PRINCIPAL AND AGENT—*Knowledge of Agent—When Not Imputed to Principal—Corporations—Fraud.*—The general rule that knowledge of an agent acquired in executing his agency is imputed to the principal, and charges him with the liabilities which such knowledge imposes, has no application to the case of an officer of a corporation who, in an independent transaction for his own benefit, seeks to perpetrate a fraud on the corporation as well as upon a third person. In such case it is presumed that the officer did not communicate his knowledge to the corporation, and the latter is not chargeable with constructive notice thereof.

2. CONTRACTS—*Ratification.*—Before a corporation should be held to have ratified an unauthorized verbal agreement of its president to relieve the maker of a note held by it from its payment, both knowledge and specific acts of ratification should be alleged and proved.

3. EQUITY PLEADING—*Answers—Motion to Dissolve Injunction.*—Where a second amended bill in a case adds no new matter, an answer filed to the original and first amended bills puts in issue all matters of fact involved in the cause, and a motion to dissolve an injunction which is heard upon the pleadings, and upon affidavits read as depositions, is in accordance with general practice in this State.

Appeal from a decree of the Circuit Court of Culpeper county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Rixey & Hiden, Jno. S. Barbour* and *E. Hilton Jackson,* for the appellants.

*Grimsley & Miller* and *Waite & Perry,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

This is a second appeal of this case to this court. The original and amended bills filed by appellants seek a rescission of a contract which it is alleged they were fraudulently induced to enter into by S. R. Smith and W. E. Coons to enjoin the Culpeper National Bank, Virginia, from collecting by suit certain negotiable notes executed by the appellants as a part of the alleged fraudulent scheme, and which notes, according to the allegations of the bill, were discounted by said bank with actual notice and actual participation of the bank in the wrong and fraud perpetrated by Smith and Coons upon appellants.

The facts and circumstances alleged in the original and first amended bills, and all that had been done to the injury of appellants pursuant to the alleged fraudulent purposes of Smith and Coons, are fully and clearly set out in the opinion of this court by Whittle, J., on the former appeal (109 Va. 776, 65 S. E. 656), and need not be repeated at length here. The decree entered by this court at the former hearing of the cause reversed the decree of the circuit court sustaining the demurrer of the Culpeper National Bank to the original and first amended bill, dismissing the same as to the bank, and dissolving the injunction theretofore awarded and remanded the cause for further proceedings therein to be had not in conflict with the views expressed in this court's opinion.

The cause having been remanded, the defendant bank gave notice to appellants of a motion to dissolve the injunction which had been granted against it on the original bill,

36

which injunction restrained the bank from collecting of complainants the notes above referred to, aggregating about $4,500, discounted by the bank, and which were then due and payable. This motion, according to the notice, was to be made before the circuit court on the 26th day of June, 1909, but by a consent decree entered on that day the motion was ordered to be docketed, and the hearing thereof continued to the 4th day of September, 1909, when it was heard upon the notice, the original and two amended bills of the complainants, the answer of the defendant bank to the original and first amended bill and its answer to the second amended bill, filed over the objection of the complainants, said answer being substantially the same as its answer to the original and first amended bills; the affidavits of complainants and others as to the value of certain lands involved in the litigation, and upon an agreed statement of facts and certain record evidence—the complainants, appellants here, relying also on the answers of S. Russell Smith, W. E. Coons, the defendant bank, and the Berry Hill Mineral Springs Company; the defendant bank, appellee here, upon the answers of Smith, Coons and the Berry Hill Mineral Springs Company, affidavits of the present cashier of the bank and all of its directors, except T. C. Smith, and other affidavits as to value of the land, etc., tender of stock and certain statements agreed upon. Whereupon, the case was fully argued and by consent submitted to the court for decision in vacation, and at the December term, 1909, the decree from which this appeal is taken, was entered, dissolving the injunction which had been theretofore awarded against the defendant bank.

Quite a number of questions have been raised and argued on this appeal, but in the view we take of the case it is only necessary for us to consider the relation of the appellee to the appellants with respect to the transaction which it is alleged the latter had with S. Russell Smith and W. E.

Coons, and by which it is claimed they were defrauded, of which fraud appellee had knowledge and in which it participated.

The original and amended bills contain substantially the same allegations, and the affidavits read by appellants in resisting the motion to dissolve the injunctions practically reiterate the allegations of the original and amended bills. The facts charged in the bills and stated in the affidavits are, that appellants were, prior to and during the year 1904, the owner of three notes aggregating $45,000, which were secured by a deed of trust on 169¾ acres of land in Culpeper county, Virginia, belonging to the Berry Hill Mineral Springs Company of Virginia, a corporation, and 600 shares of stock in said corporation; and that on the last-named date S. Russell Smith, who was president of the appellee bank, and treasurer of Culpeper county, and W. E. Coons, clerk of the Circuit Court of Culpeper county, both of whom are well known and prominent men, called upon appellants at their home in Culpeper county, Va., for the purpose of fraudulently inducing them to enter into a reorganization scheme, whereby the Berry Hill Mineral Springs Company would be reorganized upon a certain plan, which is set out in appellants' original bill; that, in order to induce appellants to accept the proposed scheme, and to mark satisfied the deed of trust securing their said notes, aggregating $45,000, and to surrender the 600 shares of stock in the company, the said Smith and Coons made the representations and promises set out in the original bill, and which are stated in the opinion on the former appeal of this case, *supra;* that appellants, relying and acting solely upon said representations, during the month of March, 1905, surrendered their stock and the notes, and marked the said deed of trust satisfied; that the new company, which Smith and Coons were to organize, was afterwards organized, and $40,000 worth of its stock issued to appel-

lants; that Smith and Coons and each of them expressly represented and promised that within two years all the stock to be issued to appellants in the new company would be redeemed or purchased at its par value by Smith personally, and he reserved the right to do so, none of which promises made by Smith and Coons were kept, but were all broken, and appellants were deceived and defrauded out of their property. With respect to the appellee bank's connection with and participation in the fraud charged against Smith and Coons, it is charged in the amended bills and stated in the affidavits for appellants, read on the motion to dissolve the injunction, that appellee, through the said S. Russell Smith, its president, agreed that if appellants would go into this reorganization scheme with Smith and Coons, and surrender their 600 shares of stock in the old company and accept $40,000 worth of stock in the new company which Smith and Coons proposed to organize, to lend them (appellants) $4,500 and accept their notes for that amount, and to carry the said notes upon renewals of the same from time to time until Smith, in his individual capacity, sold for appellants enough of their $40,000 worth of stock in the new company at par to pay off the loan of the $4,500 by the bank.

Practically, the claim made against the appellee bank is that it agreed, through Smith, its president, that if Smith were unsuccessful in selling a sufficient amount of appellants' stock in said new company to pay off the notes given by them to the appellee for the loan of the $4,500, payment of said notes was not to be demanded of appellants. Appellee made the loan of $4,500 to appellants, by discounting their notes for the same, which notes became due and were several times renewed, but finally appellee refused to renew the notes any longer and demanded their payment, which being refused, a suit against appellants was instituted for the collection of the notes, and solely, upon the allegation

of an agreement on the part of appellee, made through Smith, its president, not to attempt to collect said notes until enough of the stock of appellants in said new company should be sold, and from the proceeds of said sale the notes could be paid off, that the injunction in this cause staying the hands of the appellee in said suit for the collection of said notes was awarded.

The sum and substance of the relief prayed in the bills in this cause is: (1) That appellants' contract with Smith and Coons be rescinded, their deed of trust given by the old company securing them re-established, and that their stock in the old company be given back to them—*i. e.*, that they be placed *in statu quo;* and (2), failing in their demand to be placed *in statu quo*, they ask that their contract with Smith and Coons be specifically enforced—*i. e.*, that with respect to appellee its hands shall be stayed as to any effort on its part to collect the notes given for the loan of the $4,500 until Smith and Coons fully perform their contract with appellants.

Actual notice to appellee of the alleged fraud of Smith and Coons upon appellants is not even claimed, but their sole reliance in resisting the dissolution of the injunction awarded in the case was that constructive notice to appellee is to be imputed, for the reason that Smith was at the time of the alleged fraudulent transaction appellee's president and its controlling and managing officer, and presumed to have had authority to act for appellee in his said transactions with appellants. The controlling question, therefore, for our determination is whether or not constructive knowledge of the alleged fraud can be rightly and legally imputed to appellee from the fact that Smith was the president of the appellee bank, and alleged to be the sole manager of its affairs, and in order to carry out the alleged fraud on the appellant it became necessary, on Smith's account, to discount the notes in question for appellants in

the bank, in which latter transaction a fraud was also perpetrated on the bank.

Undoubtedly it is a well-established general rule, that knowledge of the agent is knowledge of the principal, and that the principal is ordinarily chargeable with the knowledge acquired by his agent in executing his agency, and is subject to the liabilities which such knowledge imposes; and by some authorities it is maintained that this rule is especially applicable to corporations, which can deal alone with the public through their officers and agents, and could not otherwise be affected with notice; but this rule has its exceptions, one of which applies to this case. The agent here is alleged, and by the affidavits and agreed facts is proved, to have engaged in an independent fraudulent transaction on a third person for his own benefit, and, at the same time, in order to accomplish the fraud, has also perpetrated a fraud upon his own principal.

In 2 Pomeroy's Eq. Jur. (3rd ed.), sec. 675, the author says: "It is now settled by a series of decisions possessing the highest authority, that when an agent, or attorney, has, in the course of his employment, been guilty of actual fraud, contrived and carried out for his own benefit, by which he intended to defraud, and did defraud, his own principal or client, as well as perhaps the other party, and the very perpetration of such fraud involved the necessity of his concealing the facts from his own client, then, under such circumstances, the principal is not charged with constructive notice of facts known by the attorney, and thus fraudulently concealed. In other words, if in the course of the same transaction in which he is employed, the agent commits an independent fraud for his own benefit, and designedly against his principal, and it is essential to the very existence, or possibility, of such fraud that he should conceal the real facts from his principal, then the ordinary presumption of a communication

from the agent to his principal fails; on the contrary, a presumption arises that no communication was made, and consequently the principal is not affected with constructive notice. The courts have carefully confined the operation of this exception to the condition described where a presumption necessarily arises that the agent did not disclose the real facts to his principal, because he was committing such an independent fraud that concealment was essential to its perpetration."

In *Santiago, &c.* v. *Merchants National Bank,* 139 Mass. 332, 1 N. E. 282, 52 Am. Rep. 7101, the opinion says: "While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the constructive or imputation of notice from the agent to the principal in cases of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such a fact would necessarily prevent the consummation of the fraudulent transaction which the agent was engaged in perpetrating."

There are cases which seemingly sanction the view that the exception to the general rule does not apply to directors, presidents and other such managing officers of a corporation, through whom alone the corporation can act, but in the well-considered case of *Barnes* v. *Trenton Gas. L. Co.,* 27 N. J. Eq. 33, the opinion says: "The rule based on the presumption that the agent has communicated the facts to his principal does not apply where the agent's (though an officer of a corporation) interest is opposed to that of his principal, for in such a transaction the officer stands as a stranger to the company. His interest being opposed to the interest of the company, the presumption is, not that he will communicate his knowledge to the company, but that he will conceal it; that where an officer of a corporation is dealing in his own interest opposed to theirs, he

must be held not to represent them in the transaction, so as to charge them with the knowledge he may possess, but which he has not communicated to them, and which they do not otherwise possess." Citing a number of decisions by both English and American courts.

Another instructive case in point is that of *Brookhouse* v. *Union Pub. Co.,* 73 N. H. 368, 62 Atl. 219, 111 Am. St. Rep. 623, 2 L. R. A. (N. S.) 993, 6 Am. & Eng. Ann. Cas. 675, to which there is an extended note in the last named publication reviewing a great number of decided cases, the conclusion being that the exception to the broad proposition that notice to the agent is notice to the principal, viz., where the knowledge is acquired by an officer of a corporation, while not acting for the corporation, but while acting for himself, is not imputable to the corporation, finds support in the decisions of the highest courts of England, the United States courts, and the courts of twenty-seven States of the Union, citing the cases.

In *Gunster* v. *Scranton Illuminating Co.,* 181 Pa. 327, 37 Atl. 550, 59 Am. St. Rep. 650, the question is elaborately and ably discussed, and a number of the cases relied on by counsel for appellants to sustain their side of the question are criticised.

The opinion of this court in *Martin* v. *South Salem L. Co.,* 94 Va. 58, 26 S. E. 600, is in line with the long list of cases to which the above cited belong, and says: "A corporation is not affected by the knowledge of an agent, when he himself contracts with it, or otherwise deals with it in a transaction in which his interests are opposed to the interests of the company, for in such a transaction he could not represent the company."

It is believed that no case can be found deciding that when the agent was acting for himself in a transaction, and in that same transaction defrauded his principal, and the

principal received no advantage from the transaction, notice to the agent was notice to the principal.

Upon the allegations of the bills in this cause, leaving out of view the denial of Smith in his answer and his affidavit, and in the affidavits of all the officers and directors of the appellee bank, of the truth of the allegations with respect to the knowledge of appellee of the fraud charged against Smith and Coons, it is made clearly to appear that Smith, in the transaction, was dealing in his own interest, which was distinctly antagonistic to the interest of the appellee. Assuming it to be true that in perpetrating the alleged fraud upon appellants, Smith told them, "as an inducement to get us to go into this fraudulent scheme, the bank would let us have $4,500 and not require us to pay it back until Mr. Smith sold certain stock for us and from the proceeds of the sale paid off the notes"—*i. e.,* if the stock was never sold by Smith then this money was never to be paid back—can the doctrine that knowledge of the agent is to be imputed to his principal be carried to the extent of holding appellee bound by such a contract, especially when it had no actual knowledge of the transaction and received no benefits from it? Surely not.

The argument that appellee has ratified Smith's alleged unauthorized agreement is unsound, for there was nothing for appellee to ratify. It has obtained no advantage over appellants, but to the contrary they received a *quid pro quo* for everything appellee has received from them.

In *Swindell & Co.* v. *Bainbridge State Bk.*, 3 Ga. App. 364, 60 S. E. 13, it is said: "Before a corporation should be held as having ratified a verbal agreement of its agent to relieve the makers from the payment of notes amounting to $10,000, both knowledge and acts of ratification ought to be alleged and proved. When ratification by the bank of an unauthorized agreement, made by its president, to relieve its debtor, is relied upon, some specific acts of ratification should be

37

alleged. If acquiescence in and benefits from such unauthorized agreement are relied upon as an estoppel, knowledge of such agreement by the directors of the bank, and the beneficial results accruing to the bank under such agreement, must be alleged and proved."

The actual transaction in this case between appellee and appellants is simply this: the latter presented their notes to the former for discount, attaching thereto sixty shares of stock as security for the notes, which notes were taken by the appellee bank in the usual course of business, and appellants received therefor the face value of the notes, less the ordinary discount upon the loan of the money. It has a number of times renewed the said notes, and finally demanded their payment, tendering the return of the stock deposited as security for the notes, and appellee is claiming nothing of appellants for which it has not rendered a full and fair equivalent. On the other hand, appellants refuse to pay back the money they have received of appellee in this transaction, decline to receive back their sixty shares of stock proven to be worthless, and say that the hand of appellee should be stayed in its efforts to collect the money loaned them until appellants can litigate to an end the controversy as to whether or not appellants are entitled to the relief they are asking as against Smith and Coons and the Berry Hill Mineral Springs Company, which relief is that the alleged fraudulent contract be rescinded or reformed, when in either event a court of equity could not grant the relief asked without requiring all parties to the transaction to be put *in statu quo*.

Appellants cannot succeed in this litigation unless they succeed against Smith and Coons, and even if they make a case against Smith and Coons, it does not follow that they will succeed against appellee, as to whom the injunction awarded in the cause alone applies. On the contrary, the record, as we have seen, negatives the right of appel-

lants to the relief they are asking as against appellee. Under these conditions and circumstances, it would be manifestly unjust and inequitable to hold that appellee shall not collect of appellants the money it lent them in an ordinary banking transaction until they have litigated with other parties matters of which appellee had no knowledge and with which it is not concerned.

There is no merit in the contention of appellants that the motion to dissolve the injunction awarded in the cause was heard as upon a demurrer to appellants' bills, and, therefore, the decision of this court upon the first appeal was conclusive and binding upon the lower court, and it should have overruled the motion and declined to dissolve the injunction. This contention is made upon the ground that, although appellee had answered the original and first amended bill, it had not, when the motion to dissolve the injunction was made, answered the second amended and supplemental bill. We have observed that while appellee had not, previous to the hearing of the motion formerly filed its answer to the second amended bill, it was presented and filed at the time the motion was heard, though over the objection of appellants; but if such were not the case, the three bills are practically the same in their averments, there being nothing new in either of the amended bills, and, therefore, the answer of appellee, already in the record, put in issue all the matters set up in both the original and amended bills. The motion to dissolve the injunction was made and heard in accordance with the general practice in the courts of the State, upon the pleadings and affidavits read as depositions on behalf of the respective parties.

The decree of the circuit court is right and, therefore, is affirmed.

*Affirmed.*