𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

PENNINGTON, RECEIVER, v. THIRD NATIONAL BANK OF
COLUMBUS, GEORGIA.

March 13, 1913.

1. BANKS AND BANKING—*Drafts—Deposits—Debtor and Creditor.*—
   The collection of a draft by a bank for a customer in the ordi-
   nary course of business and placed to the customer's credit
   amounts to a general deposit by the latter, and creates the rela-
   tion of debtor and creditor between them. In such case, the
   customer or depositor has the right to demand of the bank an
   equivalent amount of money, but not the specific coins or other
   currency deposited.

2. BANKS AND BANKING—*Insolvency—Receiving Deposits—Trustee for
   Depositor.*—When a bank, with knowledge of its insolvency, re-
   ceives a deposit it perpetrates a fraud on the customer, and is
   held to be a constructive trustee of the deposit, and the depositor
   may recover of the receiver the deposit, if it can be identified,
   or its equivalent, if it cannot be identified, when the customer's
   money has been mingled with the bank's funds, which, to an
   amount equal to the deposit, has gone into the hands of the re-
   ceiver.

3. BANKS AND BANKING—*Insolvency—Knowledge of Cashier—Notice
   to Bank—Receiving Deposits.*—Where an innocent third person
   has made a deposit in a bank, and throughout the transaction
   the cashier of the bank has acted for, and as the sole represen-
   tative of, the bank, and in the line and within the scope of the
   powers and duties of his office, with respect to the matter in
   hand, the knowledge of the cashier of the insolvency of the bank
   (though brought about by the antecedent misconduct of the
   cashier) is the bank's knowledge. In other words, the insol-
   vency of the bank was a condition within the knowledge of its
   executive officer, and it matters not, so far as the rights of inno-
   cent third persons dealing with the bank through him are con-
   cerned, how the knowledge of that condition was first acquired.

Appeal from a decree of the Law and Chancery Court

of the city of Norfolk, in which the appellant intervened. Decree for the complainant. Intervenor appeals.

*Affirmed.*

The material facts of this case are agreed. On June 6, 1911, the appellee, the Third National Bank of Columbus, Georgia (hereinafter referred to as the "Georgia Bank"), discounted and became the holder for value of a draft for $2,801.45, drawn by J. B. Holst & Co., of Columbus, Georgia, on Tarboro Cotton Factory, Tarboro, North Carolina, in favor of A. W. Hale, cashier, with bill of lading attached, for thirty-five bales of cotton, consigned to the order of J. B. Holst & Co., for Tarboro Cotton Factory, and bill of lading endorsed by J. B. Holst & Co. The Georgia bank sent the draft with bill of lading attached to the Bank of Tarboro, North Carolina, with instructions: "For collection and return, remit to National Park Bank, New York, for our credit, and advise." On June 30, 1911, the Bank of Tarboro presented the draft, with bill of lading attached, to the Tarboro Cotton Factory for payment, which was made the same day by its check for $2,801.45, drawn in favor of the Bank of Tarboro on the Pamlico Insurance and Banking Company of Tarboro, North Carolina, and the draft and bill of lading were marked paid and delivered to the drawee. This check was presented for payment the same day by the Bank of Tarboro, and paid by the Pamlico Insurance and Banking Company by its check for $2,801.45, drawn on the National Bank of Commerce of Norfolk, Virginia (hereinafter referred to as the "Norfolk bank"), in favor of L. V. Hart, cashier (of the Bank of Tarboro). On the same day the Bank of Tarboro sent the check, with other items aggregating $3,802.23, to the Norfolk bank for deposit for its (the Bank of Tarboro's) account; and on June 14, 1911, between 10 A. M.

and 11 A. M., the Norfolk bank paid the check by charging its amount against the account of the Pamlico Insurance and Banking Company, which had sufficient funds on deposit to pay the same, and crediting it to the Bank of Tarboro.

The Bank of Tarboro was insolvent when it received the draft from the Georgia bank, but its insolvency was not known to any of its officers except the cashier and assistant cashier, and was due solely to their defalcations.   The Bank of Tarboro suspended payment and closed its doors on June 14, 1911, at 1 :15 P. M.; and shortly thereafter the appellant, Ed. Pennington, was appointed receiver by one of the North Carolina courts to take charge of and administer the assets.   At no time since June 14, 1911, was the balance on deposit in the Norfolk bank to the credit of the Bank of Tarboro less than $4,021.33.

In these circumstances, the Georgia bank, on June 20, 1911, made formal demand on the Norfolk bank for $2,-801.45, to which it laid claim as its own money, on the ground that it was the avails of the draft which had been sent by it to the Bank of Tarboro for collection; but the Norfolk bank had, in the meantime, received notice of the failure of the Bank of Tarboro, and that it had been placed in the hands of a receiver, and refused to turn over the fund to the Georgia bank, but held it as stakeholder. Thereupon, the Georgia bank filed a bill in equity against the Norfolk bank and the Bank of Tarboro, claiming the fund, which it alleged had been traced into the hands of the Norfolk bank.   The receiver intervened by petition and also filed an answer maintaining his title to the money as a general asset of the Bank of Tarboro.   From a decree of the Law and Chancery Court of the city of Norfolk granting the prayer of the bill, Pennington, receiver, appealed.

*Willcox, Cooke & Willcox* and *Henry A. Gilliam,* for the appellant.

*E. R. F. Wells* and *Tazewell Taylor,* for the appellees.

WHITTLE, J. (after making the foregoing statement of facts), delivered the opinion of the court.

In our view of this case it lies within much narrower limits than the scope of the argument would indicate.

The general doctrine is settled that the collection of a draft by a bank for a customer in the ordinary course of business and placed to the customer's credit amounts to a general deposit by the latter, and creates the relation of debtor and creditor between them. In such case the customer or depositor has the right to demand of the bank an equivalent amount of money, but not the specific coins or other currency deposited. *Miller* v. *Norton & Smith, Receivers, ante,* p. 609, 77 S. E. 452, decided at the present term; Tiffany on Banks and Banking, sec. 4, p. 11, *et seq.* In support of the text the learned author has collected in the notes many decisions.

The influence of the language of the restrictive endorsement of the draft upon the relation between the Bank of Tarboro and its customer (namely, "For collection, and return, remit to National Park Bank, New York, for our credit and advise.") is a question upon which the authorities are not agreed, and one which we need not discuss. The concrete proposition, upon the correct solution of which the decision must rest, involves the relation between a bank and its customer with respect to a deposit made by the latter in the following circumstances: At the time the cashier of the Bank of Tarboro received the draft in question for collection, and made the collection, he knew that the bank was hopelessly insolvent; but the depositor

and the other officers of the bank had no knowledge of its insolvent condition. And the insolvency of the bank was due to the defalcations of the cashier and assistant cashier.

The authorities are agreed that when a bank, with knowledge of its insolvency, receives a deposit it perpetrates a fraud on the customer, and is held to be a constructive trustee of the deposit, and the depositor may recover of the receiver the deposit, if it can be identified, or its equivalent, if it cannot be identified, when the customer's money has been mingled with the bank's funds, which, to an amount equal to the deposit, has gone into the hands of its receiver. *Western German Bank* v. *Norvell,* 134 Fed. 724, 69 C. C. A. 330; Tiffany on Banks and Banking, sec. 89, p. 349, and cases cited in notes.

The correctness of the general principle is conceded; but it is said that this case falls within the exception to the doctrine of imputed knowledge (which doctrine is founded upon the presumption that an agent discloses his knowledge to his principal), because the fact that the insolvency of the bank was due to the defalcation of the cashier repels the presumption that he imparted the knowledge to the bank. *Baker* v. *Berry Hill Co.,* 112 Va. 280, 71 S. E. 626.

We cannot agree that this case is controlled by the foregoing exception. The defalcations of the cashier and his assistant, which caused the insolvency of the bank, occurred prior to the receipt and collection of the draft in question; and the transaction was not between him and the bank, but between him, acting for and representing the bank as its executive officer, and the bank's customer, the Georgia bank. Throughout the transaction the cashier was acting for, and as the sole representative of, the bank, and in the line and within the scope of the powers and duties of his office with respect to the matter in hand; and, therefore, his knowledge of the insolvency of the bank (though

brought about by his antecedent misconduct) was its knowledge. In other words, the insolvency of the bank was a condition within the knowledge of its executive officer, and it matters not, so far as the rights of innocent third persons dealing with the bank through him are concerned, how he first acquired knowledge of that condition. *Bank* v. *Richmond Elec. Co.,* 106 Va. 34, 56 S. E. 152; *Atlantic Trust Co.* v. *Union Trust Co.,* 111 Va. 574, 579, 67 S. E. 975; Wade on Notice (2nd ed.), ss. 683-a, 683-b; *Cook* v. *Am. Tubing Co.,* 28 R. I. 41, 65 Atl. 641, 9 L. R. A. (N. S.) 193, 211; *Morris* v. *Ga. &c. Co.,* 109 Ga. 12, 34 S. E. 378, 46 L. R. A. 506; *Bank of U. S.* v. *Davis,* 2 Hill (S. C. of N. Y.) 451; *Holden* v. *N. Y., &c., Bank,* 72 N. Y. 286; *Le Duc* v. *Moore* (N. C.) 15 S. E. 888, 111 N. C. 516; *St. Louis, &c. Ry. Co.* v. *Johnston,* 133 U. S. 576, 10 Sup. Ct. 390, 33 L. Ed. 683; *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698.

In *Le Duc* v. *Moore, supra,* in an action by the receiver of a bank on a promissory note against the maker and payee, the latter being the president of the bank to which he transferred the note by indorsement, the president and cashier constituted the discount committee and discounted the note. Held: That the bank took the note subject to equities existing in favor of the maker at the time of the indorsement.

In *St. Louis, &c., Ry. Co.* v. *Johnston, supra,* the bank became insolvent by the operations of a firm of which the president of the bank was a member. A draft was deposited in the bank for collection. Held: That the knowledge of the president of the bank's insolvency, though occasioned by his firm, was the knowledge of the bank.

In the leading case of *Atlantic Cotton Mills* v. *Indian Orchard Mills, supra,* Gray was the common treasurer of two corporations, and in order to make good his deficit in

one of the corporations, he drew checks upon the other, payable to the order of the first, by which the money was drawn and used, no other officer of either corporation knowing the facts. A similar contention was made in that case as in this, that knowledge of the officer could not be imputed to the corporation. But the court, at page 273, says: "It is true that no officer of the plaintiff, besides Gray, knew of the fraudulent origin of these checks; but in the very transaction of receiving them, the plaintiff was represented by Gray, and by him alone, and is bound by his knowledge. It is the same as if the plaintiff's directors had received the checks, knowing what he knew. For the purpose of accepting the checks, Gray stood in the place of the plaintiff, and was the plaintiff. It is quite immaterial, in reference to this question, in what manner or by what officers of the corporation the funds were afterwards used."

In the course of the same opinion, at page 276, Judge Allen observes: "We have preferred to put the decision of this point upon the broad ground that if the treasurer of a corporation is a defaulter, and his defalcation is as yet unknown and unsuspected, and he steals money from a third person and places it with the funds of the corporation in order to conceal and make good his defalcation, and the corporation uses the money as its own, no other officer knowing any of the facts, the corporation does not thereby acquire a good title to the money as against the true owner, but the latter may maintain an action against the corporation to recover back the same."

These cases sufficiently elucidate the principle upon which we have chosen to rest our decision.

The decree complained of is without error and must be affirmed.

*Affirmed.*