# Richmond.

## BOARD OF SUPERVISORS OF LUNENBURG COUNTY V. PRINCE EDWARD-LUNENBURG COUNTY BANK and H. D. PETERS, RECEIVER.

March 20, 1924.

Absent, Kelly, P., and Burks, J.

1. BANKS AND BANKING—*Deposits—Receiving Deposits with Knowledge of Insolvency—Public Funds—Receiver Constructive Trustee Ex Maleficio—Case at Bar.*—Where a bank receives deposits from a county treasurer of money beneficially belonging to the county, and the bank is insolvent and known to be so by its officers, the depositor has a right to rescind the transaction and recover back the deposits, and the bank is a constructive trustee *ex maleficio* of the deposits, and its receiver, after the money came into his hands and increased to that extent the amount of the assets, is also a constructive trustee *ex maleficio*, and it is immaterial whether the deposits involved were special or general, or were made by the county treasurer without authority.

2. BANKS AND BANKING—*Deposits—Relation Between Bank and Its Depositor.*—The relation between a bank and its depositor being that of debtor and creditor, the depositor is entitled to no preference upon the bank's insolvency, but must come in with the other general creditors. But where a bank receives a deposit with knowledge of its insolvency, the relation between the bank and the depositor is not that merely of debtor and creditor. The fraud of receiving the money deposited with knowledge of insolvency avoids the implied contract between the parties that would arise in its absence, and, having barred contract, a trust is the equitable result.

3. BANKS AND BANKING—*Receiving Deposits with Knowledge of Insolvency—Liability of Receiver.*—When a bank, known by its officers to be insolvent, collects money for a customer and mingles the same with its own funds, which, to an amount larger than the sum so received, go into the hands of its receiver, it is not essential to the right of the customer to recover from the receiver that he should be able to trace the identical money into the receiver's hands; but it is sufficient to show that the sum which went into the receiver's hands was increased by the amount so collected.

4. Banks and Banking—*Deposits—Special Deposits.*—A special deposit is not such in the sense that it gives the legal or beneficial owner of it the right to recover it back of an insolvent bank, or of its receiver, as against the claims of general creditors of the bank, unless the circumstances are such as to show that the bank had no express or implied contract right to use the money, or other thing deposited, in the course of its business of banking. If the deposit is a loan to the bank, it is not a "special deposit," whether the deposit consists of money, or funds belonging to the Commonwealth, or a governmental subdivision, or is trust money, if the depositor has the lawful authority to make the loan.

5. Banks and Banking—*Deposits—Lack of Authority to Make the Deposit.*— The effect of a lack of authority in the depositor to make the deposit is that the relationship of creditor and debtor is not, in such case, created between the depositor and the bank, and for that reason the deposit remains the property of the depositor, or of the beneficial owner of it, and may be recovered back from the bank, or its receiver, as against claims of general creditors of the bank.

6. Counties—*Parties—Board of Supervisors as Party in Suit for County Funds.*—A county is the proper party plaintiff in a suit in equity to recover back a deposit made by the county treasurer of funds of which the county was the sole beneficial owner in a bank which was hopelessly insolvent and known so to be by its officers at the time of the deposit.

7. Parties—*Equity—Beneficial Owner.*—In equity the beneficial owner is the proper party plaintiff in a suit to recover property; and this is true of suits to recover back money, or other property, in proceedings involving trusts *ex maleficio.*

Appeal from a decree of the Circuit Court of Lunenburg county. Decree for defendants. Complainant appeals.

*Reversed and remanded.*

This is a suit in equity instituted by petition in a pending cause by the county of Lunenburg, the *cestui que trust,* through its board of supervisors, the appellants, seeking to have the appellee bank held to have been primarily, and the appellee receiver of the bank held to be secondarily (as having in his hands the assets of the bank), a constructive trustee *ex maleficio* of certain deposits by the county treasurer of money bene-

ficially belonging to the county in said bank, and obtained by it at a time when, unknown to the depositor, the bank was insolvent and was so known to be by its officers, on the ground, among others, that in such case the *cestui que trust* has the right to rescind the transaction and recover back the deposits, where, as is alleged to be true of the instant case, the said money came into the receiver's hands, and it increased to that extent the amount of the assets which came into the hands of the latter.

The case was decided in the court below upon the demurrer of the receiver to the petition, the decree being adverse to the county and dismissing the petition, the effect of which was to hold that the receiver was not, under the circumstances mentioned, a constructive trustee *ex maleficio* of the money sought to be recovered back. It is that decree which is under review.

The petition, so far as material, is as follows:

"To the honorable circuit court of Lunenburg county:

"Your petitioner, the board of supervisors of Lunenburg county, respectfully represent unto your honor, as a basis for the relief hereinafter prayed for, the following case:

"1. Upon a bill filed by M. E. Gee and others against the Prince Edward-Lunenburg County Bank, Incorporated, before the judge of the circuit court of Lunenburg county, in vacation, on the 9th day of January, 1922, praying that a receiver be appointed for the said bank, an order was entered appointing said H. D. Peters, receiver, and directing him to take charge of the books, papers and assets of said bank, and proceed to administer them under the supervision of your Honor.

"2. That upon the date of the appointment of said receiver and at the time he took charge of the assets of

said bank, there was in said bank certain moneys belonging to your petitioners, to-wit, the sum of $4,-705.12, deposited in said bank on January 1, 1922, in currency, by C. C. Hatchett, treasurer of Lunenburg county, in his name as treasurer of Rehoboth District Improvement Road Sinking Fund, for the purpose (and no other) of redeeming certain bonds issued by your petitioners for the improvement of the public roads of Rehoboth magisterial district in said county; and the sum of $1,325.16 deposited in said bank in currency in the name of C. C. Hatchett, treasurer, for the specific purpose (and no other) of taking up certain warrants issued by said board of supervisors to persons residing in Pleasant Grove district, in which said bank is located. * *

"3. That upon the qualification of said receiver and the taking charge of the assets of said bank, said sums came into his hands.

* * * * * * * * * *

"Petitioners further represent that said deposits were made with funds from sources other than said bank and that the assets of said bank were augmented by said transaction.

* * * * * * * * * *

"Petitioners further allege that said bank was insolvent when said deposits were made, and so known to be by its said officers; * * *. all of which was wholly unknown to petitioners and said C. C. Hatchett, treasurer, who regarded said bank as one of the strongest institutions in the county.

"Your petitioners pray that they may be allowed to file this petition, and that, if necessary, it may be considered as exceptions duly filed in regular course to the report of Master Commissioner W. E. Nelson, in so far as said report does not allow said sum as a preferred

claim; that the said Prince Edward-Lunenburg County Bank, Incorporated, and H. D. Peters, receiver, be made defendants to this petition, and required, but not on oath, to answer the same, oath being hereby waived; and that this court may declare said funds to be impressed with a trust and entitled to preference in the administration of the assets of the said insolvent bank, and that it be decreed that said sums be paid in full to your petitioners, the said board of supervisors, and that your Honor may grant such further and other relief in the premises, both general and special, as the nature of the case may require, or to equity and good conscience shall seem meet.

"And your petitioners will ever pray, etc.

"BOARD OF SUPERVISORS OF LUNENBURG COUNTY,

"By counsel."

The demurrer of the receiver, as stated in writing, was upon the following grounds:

"(1). Because this petition should be filed in the name of the treasurer of Lunenburg county, C. C. Hatchett, and not in the name of the board of supervisors of Lunenburg county, Virginia. The treasurer of Lunenburg county, C. C. Hatchett, is the legal custodian of the funds of the county. The supervisors have only the right to draw warrants thereon. The treasurer is absolutely liable to them for all funds coming into his hands and they cannot release him from his liability even by ordering him to deposit money in a certain bank.

"(2). Because the funds deposited by the said C. C. Hatchett in the Prince Edward-Lunenburg County Bank were general deposits—not trust deposits.

"(3). Because the facts alleged in the petition do not constitute a trust or show that a trust was created at the time the deposits were made by the said C. C.

Hatchett in the Prince Edward-Lunenburg County Bank; and the facts alleged show merely the general deposit of said funds creating the relationship of debtor and creditor between said bank and said depositor.

"(4). Because the public funds of a county or municipality deposited in a bank, which subsequently becomes insolvent, by the treasurer of said county or municipality, are not given a preference purely as such. In the absence of facts creating a trust (as is the case here) they are treated as other deposits and stand on the same footing as other general deposits or individuals. The fact alone that they are public funds creates no trust or preference.

"(5). Because the said board of supervisors of Lunenburg county, Virginia, never made any deposits in said bank as same were made by the treasurer of said county, C. C. Hatchett, and said board of supervisors has no privity of contract with said bank or ever has had any.

"(6). Because the title to said moneys deposited in said insolvent bank was not and is not in the board of supervisors of Lunenburg county; the legal custody thereof is in C. C. Hatchett, treasurer, who must account to the said board of supervisors for the same *in toto*, whether or not he receives same or any part thereof from said insolvent bank.

"(7). Because said C. C. Hatchett, treasurer, as custodian of the funds of the county, had the right to make a deposit in any bank, at his own risk, so that the same became a general deposit, and he exercised this right when he made the deposits mentioned in said petition in said Prince Edward-Lunenburg County Bank."

*Geo. E. Allen*, for the appellant.

*N. S. Turnbull, Jr.*, and *E. W. Hudgins*, for the appellees.

Sims, P., after making the foregoing statement, de-
livered the following opinion of the court:

In our view of the case there are only two questions
presented by the assignments of error which need be
passed upon, and they will be disposed of in their order
as stated below.

[1-3] 1. Was the appellee receiver, under the cir-
cumstances above mentioned, a constructive trustee
*ex maleficio* of the money in the bill mentioned, so that,
if the money had belonged to and if this suit had been
brought by the county treasurer, he would have had
the right to recover the money?

The question must be answered in the affirmative.

In *Pennington* v. *Bank,* 114 Va. 674, at p. 678, 77
S. E. 455, 457 (45 L. R. A. [N. S.] 781) this is said and
held: "The authorities are agreed that when a bank,
with knowledge of its insolvency, receives a deposit, it
perpetuates a fraud on the customer, and is held to be
a constructive trustee of the deposit, and the depositor
may recover of the receiver the deposit if it can be
identified, or its equivalent, if it cannot be identified,
when the customer's money has been mingled with the
bank's funds, .which, to an amount equal to the deposit,
has gone into the hands of its receiver. *Western Ger-
man Bank* v. *Norvell,* 134 Fed. 724, 69 C. C. A. 330;
Tiffany on Banks and Banking, sec. 89, p. 349, and cases
cited in notes."

In the citation from Tiffany just mentioned, this is
said: "The relation between a bank and its depositor
being merely that of debtor and creditor, the depositor
is entitled to no preference upon the bank's insolvency,
but must come in with the other general creditors."
And this authority continues: "For a bank to receive
deposits with knowledge of the hopeless insolvency,

however, is fraudulent, and in such case the depositor may rescind the transaction and recover back his deposit from the bank, which becomes a constructive trustee *ex maleficio*, and holds the deposit for the use of the depositor. A banker, who is, to his own knowledge, hopelessly insolvent, cannot honestly continue his business, and receive the money of his customers, and, although having no actual intention to cheat and defraud a particular customer, he will be held to have intended the inevitable consequences of his act, *i. e.*, to cheat and defraud all persons whose money he receives and whom he fails to pay when he is compelled to stop business. * * * The right to reclaim * * * the money in such cases is not precluded by the provisions forbidding preferential transfers and payments, and requiring ratable distribution of the assets among creditors, since the plaintiff does not claim under a transfer from the bank, but under his original title; that is, he is not seeking to enforce a right as creditor of the bank, but to reclaim his own property obtained by fraud; * *."

In *Western German Bank* v. *Norvell, supra* (134 Fed. 724, 69 C. C. A. 330), as correctly stated in the headnote, this is held: "When a bank, known by its officers to be insolvent, collects money for a customer and mingles the same with its own funds, which, to an amount larger than the sum so received, go into the hands of its receiver, it is not essential to the right of the customer to recover from the receiver that he should be able to trace the identical money into the receiver's hands; but it is sufficient to show that the sum which went into the receiver's hands was increased by the amount so collected." Citing *Richardson* v. *New Orleans Deb. Red. Co.*, 102 Fed. 780, 42 C. C. A. 619, 52 L. R. A. 67, and the cases there cited, among which

are *Central Nat. Bank* v. *Connecticut, etc., Co.*, 104 U. S. 54, 69, 26 L. Ed. 693, 700; and *Knatchbull* v. *Hallett*, L. R., 13 Ch. Div. 696, 707.

In *Richardson* v. *New Orleans Deb. Red. Co.*, just mentioned, this is said and held: "Ordinarily, when funds are deposited in bank, the relation of debtor and creditor immediately arises between the banker and the depositor. The money deposited becomes the property of the banker. He has the right to use it * *. When the banker obtains the deposit by committing a fraud, as by receiving it after hopeless insolvency, the relation between the parties is very different. The fraud avoids the implied contract between the parties that would arise in its absence, and having barred contract, a trust is the equitable result. The fraud itself gives no lien. The fraud prevents the money deposited from becoming the property of the banker, and thereby prevents the relation of debtor and creditor arising between the parties. As the money does not become the property of the banker, it, of course, remains the property of the depositor. In the banker's hands, therefore, it is a trust fund—as much so as if it had been a special deposit. The money, which the banker has received in the due course of honorable business, before insolvency, has become his property, and he the debtor of those who deposited it. Now, if the banker, having money in his bank, fraudulently receives other money, and mingles it with the money on hand, can the defrauded depositor reclaim his money? That is the question presented by this case. The bank received $1,658.00 of the depositor's money just before it closed. It was received under circumstances of fraud, so that it remained the property of the appellee. It passed with the other funds to the hands of the receiver, or, if the identical money did not so pass to the receiver, the

sum turned over to the receiver was increased exactly $1,658.00 by the appellee's deposit. * * If we find that the transaction between the appellee and the bank created a trust, or lien on the funds of the bank, with which the appellee's deposit was mingled, the trust, or lien, extended to the whole mass of money and the paying out of part of it would not remove the charge from the remainder. The question then is reduced to this: If a banker takes $1,000.00, not his own, and mixes the sum with $10,000.00 of his own money, can the owner of the $1,000.00 reclaim it? Has he, in equity, a charge on the whole to the amount of his money which has gone into it? Formerly it was held that he had not. The equitable right of following misapplied money, it was said, depended on identifying it, the equity attaching to the very property misapplied. Money, it was said, had no earmarks and the tracing of the fund would fail. This view was manifestly inequitable and unjust, and so, finally, it was held that confusion by commingling does not destroy the equity, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion of the fund a priority of right over the other creditors of the possessor and wrongdoer."—Citing and quoting from a number of cases of the highest authority sustaining such holding.

In *Knatchbull* v. *Hallett, supra* (L. R. 13 Ch. Div. 696, 707), on the direct point in question, Sir George Jessel, master of the rolls, says this: "* * Supposing, instead of being invested in the purchase of lands or goods, the money were simply mixed with other moneys of the trustee—using the term * * in its full sense, as indicating every person in a fiduciary capacity. Does it make any difference, according to the modern doctrine of equity? I say, none. It would be very

remarkable if it were to do so. Supposing the trust money was 1,000 sovereigns, and the trustee put them into a bag, and by mistake, or accident, or otherwise, dropped a sovereign of his own into the bag. Could anybody suppose that a judge, in equity, would find any difficulty in saying that the *cestui que trust* has a right to take 1,000 sovereigns out of that bag? I do not like to call it a charge of 1,000 sovereigns on the 1,001 sovereigns, but that is the effect of it. I have no doubt of it."

In *Central Nat. Bank* v. *Connecticut, etc., Co., supra* (104 U. S. 54, 69, 26 L. Ed. 693, 700), the Supreme Court approves and adopts the same holding as that just mentioned.

Many other cases, including United States Supreme Court cases, might be cited to the same effect, but the foregoing are enough.

There are other assignments of error, resting upon other allegations of the bill, which are omitted from the statement preceding this opinion, which allege facts from which it is claimed, in substance, in behalf of the county, that the treasurer had no right to make the deposits as general deposits, or indeed, as special deposits, under the special circumstances alleged, but not set forth above, and that in any case the deposits were special deposits, so that, in equity, a constructive trust arose, and that the receiver, as the custodian or possessor of the money in question, derived as the fruit of the wrongful deposits in and receipts by the bank, must be held to be a constructive trustee of the money, with the consequential right of recovery of it from him above mentioned. And the argument before us upon these subjects, by counsel on both sides of the case, has taken a wide range, and great industry and ability has been displayed in presenting the very interesting and im-

portant questions involved, and a very great number of authorities have been cited, especially upon the question of when a deposit in bank is a special deposit and when the Commonwealth and its governmental divisions have preference in the collection of its debts over other general creditors, in the distribution of the assets of an insolvent debtor. But, in our view of the case, it is immaterial whether the deposits involved were special or general deposits, or were made by the county treasurer without authority to do so, under the special circumstances, in view of the fact that the bank was insolvent, as known to its officers, when it received the deposits in question. Precisely the same result aforesaid arose from the latter fact alone as would have arisen from the fact that the deposits were special deposits, or that the county treasurer was forbidden by law (which we do not hold to be true) or, with the knowledge of the bank, was forbidden by those having lawful authority (if they had such authority, which we do not hold to be true), to forbid him to make the deposits, and the bank became insolvent after the deposits were made. Only in case the bank becomes insolvent after the deposit, is it material, upon the right of recovery under consideration, whether the deposit was a special deposit or one made without authority. And, indeed, the fact that the deposit was a special deposit, or made without authority, would be material, whether the bank became insolvent before or after the deposit, only in this; as showing that the contract relation of debtor and creditor never arose between the bank and the depositor.

[4]. For, while there is some ambiguity in the very words "special deposit," and there is some seeming conflict in the authorities on the subject, it may be said with confidence that certainly the great weight of authority, and perhaps the almost unanimous real

holding, is to the effect that a special deposit is not such, in the sense that it gives the legal or beneficial owner of it the right to recover it back of an insolvent bank, or of its receiver, as against the claims of general creditors of the bank, unless the circumstances are such as to show that the bank had no express or implied contract right to use the money, or other thing deposited, in the course of its business of banking. If, in the case of deposit of money in bank, the circumstances show that it was contemplated by the depositor and the bank that the bank should become the owner of the specific money deposited (that is, was to have the right to lend it, or otherwise use it, in its banking business, for any moment of time)—with the obligation resting on the bank merely of paying out the amount thereof thereafter, as directed by the depositor, at the time of the deposit, or after the deposit, upon checks of the depositor, or otherwise—(all of this being immaterial so long as the sa'd right of use by the bank intervenes between the deposit and the paying of it out)—the deposit is not a "special deposit" in the sense above mentioned. In other words, if the deposit is a loan to the bank, it is not a "special deposit" within that meaning. And that is equally true, whether the deposit consists of money, or funds, belonging to the Commonwealth, or county, or other governmental subdivision, or is other trust money, or funds, and the bank knows it to be such at the time of the deposit, if the depositor has the lawful authority to make the loan, and thus enter into the relationship of creditor and debtor with the bank, and does enter into such relationship. 3 R. C. L., secs. 149, 150, pp. 521-2; *Peak* v. *Ellicott*, 30 Kan. 156, 1 Pac. 499, 46 Am. Rep. 90; *Fogg* v. *Tyler*, 109 Me. 109, 82 Atl. 1008, 39 L. R. A. (N. S.) 847, Ann. Car. 1913-E, 41; *Woodhouse* v. *Crandall*, 197 Ill. 104, 64

N. E. 292, 58 L. R. A. 385; *Elmira Savings Bank* v. *Davis*, 142 N. Y. 590, 37 N. E. 646, 25 L. R. A. 546; *Mutual Accident Asso.* v. *Jacobs*, 141 Ill. 261, 31 N. E. 414, 16 L. R. A. 516, 33 Am. St. Rep. 302; *Anderson* v. *Bank*, 112 Cal. 598, 44 Pac. 1063, 53 Am. St. Rep. 228, 32 L. R. A. 479. The decisions on the subject are very numerous and the citation of them might be indefinitely multiplied.

[5] Similarly, the authorities hold that the effect of a lack of authority in the depositor to make the deposit is merely this: The relationship of creditor and debtor is not, in such case, created between the depositor and the bank, and for that reason the deposit remains the property of the depositor, or of the beneficial owner of it, and may be recovered back from the bank, or its receiver, as against claims of general creditors of the bank. *Myers* v. *Board of Education*, 51 Kan. 87, 32 Pac. 658, 37 Am. St. Rep. 263; *Board of Fire & Water Com'rs, City of Marquette* v. *Wilkinson*, 119 Mich. 655, 78 N. W. 893, 44 L. R. A. 493; *In re Bank of Nampa*, 29 Idaho, 166, 157 Pac. 1117; *First Nat. Bank* v. *Bunting*, 7 Idaho, 27, 59 Pac. 929; and other authorities on the subject which might be greatly multiplied.

Hence we do not enter upon any consideration of the subject of whether the deposits in the instant case were special deposits, or were made without authority, under the special circumstances.

[6] The remaining question for decision is this:

2. Is the county, through its board of supervisors, the proper party plaintiff and entitled to recover back the moneys involved in this suit in equity?

The question must be answered in the affirmative.

It appears from the allegations of the bill, which upon demurrer must be taken to be true, that the county is the sole beneficial owner of the money in question. The

county treasurer has no individual interest therein—not even to the extent of any commissions coming to him thereon.

[7] It is elementary that in equity the beneficial owner is the proper party plaintiff in a suit to recover property; and this is true of suits to recover back money, or other property, in proceedings such as that before us, involving trusts *ex maleficio.* 2 Pomeroy's Eq. Jur. (4th ed.), sec. 920; 3 *Idem,* sec. 1053.

Moreover, in the instant case, upon recovery by the plaintiff county, through its board of supervisors, the county treasurer is made by statute the proper hand to receive the recovery, and not the board of supervisors; and under the prayer of the bill for general relief the court will enter the proper decree on the subject; so that for all practical purposes the suit stands just as if it were a suit by the county treasurer (who deposited the moneys), brought for the benefit of the county.

The decree under review will be reversed, and the cause remanded for further proceedings to be had not in conflict with the views expressed in this opinion.

*Reversed and remanded.*