WILLIAM BUTCHER et al., Respondents, v. WILLIAM J. BUTLER, etc., et al., Appellants.

Kansas City Court of Appeals, December 7, 1908.

1. BANKS AND BANKING: Deposits: Debtor and Creditor: Preference: Trust Fund. The relation between a bank and its depositors is that of debtor and creditor and in the distribution of an insolvent bank's funds all general depositors must share alike without priority to any; and this rule applies to depositors by a trustee even though the banker knows of the existence of the relation.

2. ———: ———: ———: ———: ———. A general deposit passes the title to the money to the bank, whereas in case of a special deposit the bank merely takes charge and custody of the property without authority to use it and the depositor is entitled to receive back the identical thing deposited. In the absence of proof, the deposit is presumed to be a general one and one claiming otherwise has the burden to show it a special one.

3. ———: ———: ———: ———: ———. A and B had a contract about boring a well on A's land and they deposited the contract with A's banker and A made a deposit to secure B under the terms of the contract. The banker charged the same to the trust fund account and gave the bookkeeper a ticket referring to the contract, but passed the money to the general funds of the bank. *Held*, on a review of the evidence that the transaction constituted a general and not a special deposit and the title passed to the bank which became the debtor of both parties as the contract directed, and the bank was not a trustee; and the trust fund entry, was not conclusive of the character of the transaction.

Appeal from Bates Circuit Court.—*Hon. Chas. A. Denton*, Judge.

REVERSED.

*Jno. A. Eaton, E. H. McVey* and *W. O. Jackson* for appellant.

(1)  The deposit on June 25, 1906, was a general deposit, and thereby the relationship of debtor and creditor became established between the Bates National Bank and B. T. Becker. Paul v. Draper, 158 Mo. 200; Kavanaugh v. Burk, 59 Mo. App. 1. c. 547; Bank v. Roll, 60 Mo. App. 585.   (2)  The deposit was not a bailment. There was further no agreement for the keeping of the funds separate, nor any agreement to return the specific check or funds deposited, and the bank rightfully mingled the proceeds with its own.   Ency. Words and Phrases, p. 6574; Paul v. Draper, 158 Mo. 200; Morse on Banks and Banking, sec. 210.   (3)  The assets of the bank were not swelled by the transaction.

*Thos. J. Smith* and *Silvers & Silvers* for respond-
ents.

(1)   If the deposit was made in trust the amount
thereof will be segregated from the assets of the bank;
even though the funds originally deposited have been
mingled with the general assets of the bank, trustee.
Tierman's Exr. v. B. & L. Ass'n, 152 Mo. 142.   (2)
If the deposit was made to be held in trust and disposed
of according to the terms of the contract then the mere
fact that the bookkeeper of the bank entered the credit
up to the individual account of B. T. Becker instead of
entering it up on the books as a trust deposit, does not
take from the deposit its character of a trust fund.  This
is true whether such wrongful book entry was made by
the trustee intentionally, or by mistake.   (3)   In con-
struing this rule, the Supreme Court has held that when
a trustee has wrongfully mixed money with his own so
that it cannot be identified, equity will follow the money
by taking out of the trustee's insolvent estate the amount
of the trust fund.   Bank v. Brightwell, 148 Mo. 365;
Harrison v. Smith, 83 Mo. 210.   (4)   Even though
it were true, as the appellants contend, that B. T.
Becker, in the first instance, deposited this money to
his indivdual account; yet the appellants cannot deny
that if, after depositing the one thousand dollars to his
individual account, B. T. Becker had checked the same
out in cash and then turned around and made a new de-
posit of the cash to be held by the bank in trust, for the
purpose of paying Butcher; then by virtue of the second
deposit the one thousand dollars would have become a
trust deposit.  1 Pomeroy's Equity Jurisprudence (Ed.
1886), sec. 378, p. 411.   (5)   The contract of deposit
under which the one thousand dollars was put into the
bank was construed by the bank and Becker and Butcher
as creating a trust relationship between the bank and
Becker and Butcher.   The bank accordingly placed the
$1,000 in a trust fund account, beyond the reach of either
of the plaintiffs, and held and treated it as a trust fund.

The parties having construed the transaction as creating a trust fund, the court will construe it as the parties do. Gas Light Co. v. St. Louis, 46 Mo. 121'; Rose v. Carbonating Co., 60 Mo. App. 28; 9 Cyc. pp. 588, 590 and cases cited.

JOHNSON, J.—Action in equity to obtain a preference over the general creditors of the insolvent estate of the Bates National Bank. Plaintiff prevailed in the trial court and the cause is here on the appeal of defendants.

June 25, 1906, L. C. Martin and plaintiff B. T. Becker of Nevada, Missouri, entered into a written contract with plaintiff William Butcher of Mound City, Kansas, by the terms of which Butcher was to drill a certain well for Martin and Becker near Butler, Missouri. To secure the payment to Butcher of the agreed consideration for his performance of the contract, it was agreed in that instrument: "Said first party (meaning Becker) agrees to deposit one thousand dollars in the Bates National Bank of Butler, Mo., as a guarantee of its part for the use of said second party (Butcher) for such drilling; . . . payment to be made to said second party as follows: Each well to be paid for when it is completed and capped or when drilling is stopped." The contract was deposited by the parties with the cashier of the Bates National Bank on the date of its execution and at the same time. Becker deposited two checks, one for $1,000 drawn by him on a Wisconsin bank and the other for $500, drawn on a bank in Nevada. A general account was opened by the bank with Becker in which the amounts of these checks were treated as so much money placed to the credit of the depositor. In due time the checks were collected by the bank. Afterward Becker was charged in this account with the following item: "Trust fund, June 29, $1,000.00." The cashier testified concerning this item that on discovering that Mr. Becker, if he chose, might exhaust the account

by checking against it, since it was a general account, Mr. Butcher demanded that the said sum of $1,000 be placed by Becker in the bank in a way that would not subject it to the payment of his individual checks and to this end caused Becker to write the following letter to the bank:

"Butler, Mo., June 29, 1906.
"The Bates National Bank, Butler, Mo.

"Gentlemen: You will please reserve $1,000 of my account until the test well I am about to have drilled in or near Butler is down 1,000 feet unless gas be found at a less depth after completion of the well, or when it will have been drilled to a depth of 1,000 feet. Mr. Win Butcher is to be paid in full his account against myself and L. C. Martin."

Acting on the instructions contained in this letter, the cashier made out and handed to the bookkeeper a deposit slip as follows:

"Trust fund by T. B. Becker . . . checks as fol-
    lows ........... ................ ..........$1,000.00
"To be paid to Butcher when he shall have put
    his drill down 1000 feet ................ $1,000."

We quote from the testimony of the cashier relative to this account.

### Direct Examination.

"Q. That memorandum was for the information of your bookkeeper? A. Yes, sir; or anybody else that might— Q. It never was given to anybody else, just kept in the bank? A. Yes, sir; it is for the purpose of showing how that money is to be disposed of; before that it was to the credit of Mr. Becker; he could check it out; after that it wasn't to his credit; he couldn't check nor nobody else could until the contract which it referred to was complied with. Q. You may explain to the court

that trust fund account. A. Well, judge, the trust fund account, it is just the same as any other individual account in the bank; that is, it is to be—it is counted one of the accounts and in the bank, but the difference between that and every other man's account is that every deposit that is made there has a memorandum to explain what is to be done with their money; of course if you deposit money to your own credit, there is no explanation of that, you check it out whenever you get ready, or anybody else; but the trust fund, we have an account called the trust fund, for the purpose of taking care of anything that might be deposited for a different purpose to the ordinary ways of depositing money; if you put the money there for your own credit, you might say, pay John Smith, if you wanted to and that would be all there would be about that; but if it had to be determined by something hereafter, we would put it in the trust fund, and mark on that ticket what had to be done; so in this case it says, 'See contract,' and the contract decides what is to be done with that money; that is the trust fund account—just an account for taking care of things that individuals might want to put up there with a memorandum of what is to be done about it hereafter, and that is what that is; and that contract there is the memorandum in this case; but we done that with every individual that done that, with every two men that come in there and wanted to make some definite agreement, we would have to have some kind of way of disposing of their money, put in there for that purpose, and that is the way we had . . . My understanding is that Butcher—that Becker, Martin and Becker are one man, practically one man, and Butcher is the other fellow; and my idea was all the time that whenever Becker, who furnished the money, agreed with Butcher that Butcher should have it, then Butcher would get it; that was my idea and I think that was what the contract said."

### Cross-Examination.

"Q. Mr. Clark, the fact of the thing is like this, then, that at the time the thousand dollars was put in there, the understanding and agreement was it was put there for the purpose of being held by the bank to pay Butcher when he complied with the contract? A. I think that was the understanding. Q. And the bank or the officials or clerks of the bank had on file a certificate something like that, and it said B. T. Becker account? A. Yes, sir. Q. The bookkeeper, when he goes over the files at night, posted up his books at night from the files, or when he did that, he entered this thousand dollars to the B. T. Becker individual account? A. Yes, sir. Q. That then Mr. Butcher got to talking with you and called your attention to the fact that Mr. Becker could draw that money out if he wanted to? A. Very likely. Q. And then wanted to keep it so Becker could not draw it out, and for the purpose of carrying out the original intention, you changed it over to the trust fund? A. Yes, sir."

There is nothing in evidence to show that the particular $1,000 placed to the trust fund account was to be kept separate from the other funds in the bank. It was not so segregated, but was treated by the officers of the bank as were the moneys received from other depositors. In September of that year, the bank went into liquidation and a receiver of its assets was appointed by the Comptroller of the Currency of the United States. Butcher and Becker had a lawsuit over the drilling of the well which resulted in a judgment in favor of Butcher for about $250. Afterward, they joined as plaintiffs in the bringing of this suit. In the judgment entered, the court found "that on June 25, 1906, plaintiff B. T. Becker deposited with said bank the sum of one thousand dollars, as a special deposit and trust fund, to be held by said bank for the special purpose of paying the same to plaintiff Win Butcher upon the compliance on

the part of Win Butcher with a certain contract between said Becker and one L. C. Martin on the one part, Win Butcher on the other, which said contract was at the time of such deposit, deposited with said defendant bank, in connection with the deposit of one thousand dollars, aforesaid; that said defendant Bates National Bank took and received said one thousand dollars as a special deposit and trust fund under the contract and terms aforesaid." Other facts appear in the record, but those stated are all that need be considered.

The trade of a banker is to receive money and use it for profit. He is guilty of no breach of trust or impropriety in thus employing the funds coming into his custody from general depositors and his relation to them in no sense is to be treated as that of trustee and *cestui que trust*, but is that of debtor and creditor. Consequently, in the distribution of the funds of an insolvent bank, all general depositors stand upon one ground. None is entitled to any preference or priority over others. This rule applies to a deposit made by one who sustains fiduciary relations to the funds and this, too, where the deposit is received with knowledge on the part of the banker of the existence of such relation but without an understanding that the bank is to treat the funds as a special deposit. Such was the view entertained by the Supreme Court in Paul v. Draper, 158 Mo. 197, where it was said:

"The fact that the deposit was of a trust fund, and known to the bank to be such, would not of itself make the bank a trustee of the fund for the benefit of the *cestui que trust*. In order to have that effect there must have been something in the circumstances of the deposit to constitute it a special, as contradistinguished from a general, deposit, into which two classes all deposits in commercial banks may be divided. If the deposit belonged to the former class the fiduciary relation might well arise; if to the latter, in the absence of *mala fides*, it could not do so, for by a general deposit in good

faith the title to the fund deposited passed. The bank
became the owner thereof, the relation of debtor and
creditor, and not that of trustee and *cestui que trust,* was
created."

A general deposit is where the bank is given custody of the money deposited with the intention expressed
or implied that the bank is not to be required to return
the identical money but only its equivalent. In such
cases, the legal title to the money passes to the bank, and
the depositor divested of his title must rely on the obligation of the bank to repay him. In the case of a special
deposit, the bank merely assumes charge and custody of
the property without authority to use it and the depositor is entitled to receive back the identical thing deposited. The title remains with the depositor and if the
subject be money, the bank has no right to mingle it with
other funds. [Alston v. State, 9 So. 732; Morse on
Banks and Banking (4 Ed.), section 183, et seq.; 7
Words and Phrases Judicially Defined, section 6574, and
cases cited.]

In the absence of proof to the contrary, a deposit is
presumed to be general and it devolves on the party who
claims it is not to show that it was received by the bank
with the agreement expressed or clearly implied that it
should be kept separate from the other funds of the bank
and the identical money returned to the depositor. The
deposit under consideration, we think, was general, not
special. There was no intention or thought entertained
by Becker, Butcher or the bank that the funds deposited
were to be kept separate and the bank deprived of their
use. It was the idea to put the money beyond the control
of the depositor Becker to protect the contingent interest in it given to Butcher by the contract, but when
the time should come for the money to be paid out, the
obligation of the bank was to make the payment out of
its general funds and not to return the identical money.
The legal title thus was vested in the bank and it was

guilty of no wrong in commingling that money with its other money.

The facts that the bank was to recognize Butcher as the owner of the beneficial interest in the deposit only on the happening of a certain event and that until then, Becker should have no control over the deposit, did not alter the character of the bank's relation to the deposit. In making it in the manner he did, Becker was acting both for himself and as the agent of Butcher to the extent of the contingent interest the latter had in the money. The bank became the debtor of both parties, was bound to pay the money out at any time on their joint check and, until the occurrence of the determinative event, was not entitled to honor the individual check of either. This arrangement did not constitute the bank a technical trustee of the deposit. Such transactions are common in banking and our attention has not been called to any principle which sustains the contention that restrictions of such nature on the drawing out of a deposit are sufficient in themselves to deprive the bank of the use of the money deposited.

There is nothing to change our conclusion that this was a general deposit in the fact that the bank entered the transaction on its books in what it called "a trust fund account." That was a mere name used in bookkeeping, and while its use has some evidentiary significance, it is not conclusive of the question of whether the account was general or special and is overborne by facts and circumstances of overwhelming weight which show that the deposit was intended to be general.

The judgment is reversed. All concur.