W. H. WILSON, Respondent, v. FARMERS FIRST
NATIONAL BANK, a Corporation, Appellant.

Kansas City Court of Appeals, January 19, 1914.

1. **BANKS AND BANKING: Debtor and Creditor: Deposit.** The
plaintiff sued to recover $1245.47, belonging to him which was
deposited to his brother's account by a commission company
in the defendant bank. The plaintiff and his brother were
formerly in the business of buying and shipping hogs. They
dissolved partnership, and the brother continued the business,
but lost his credit and owed the defendant over $1000. Before
his failure he instructed the commission company to apply
his consignments to defendant bank, which he never revoked.
The plaintiff employed him to assist in buying and shipping
a carload of hogs. The stock was shipped and money deposited
in defendant bank to the brother's credit by the commission
company, and defendant refused to pay it over to the plaintiff.
*Held,* that the demurrer to the evidence was properly over-
ruled.

2. ———: ———: ———. A general deposit in a bank made
by or for the account of a depositor creates the relationship
of debtor and creditor between the bank and the depositor
and there can be no question of the right of the bank to
apply such deposit in payment of an indebtedness of the
depositor to the bank without his consent.

3. ———: ———: ———. But the relationship of banker and
depositor being contractual cannot be created except by mutual

consent and since in this case the minds of the parties did not meet in mutual understanding and agreement, no lawful contract was made, and the defendant, having obtained possession of the funds by mistake and not for value, cannot be said to have any equitable claim to them.

Appeal from Callaway Circuit Court.—*Hon. D. H. Harris*, Judge.

AFFIRMED.

*J. R. Baker* for appellant.

*Fauntleroy, Cullen & Hay* for respondent.

JOHNSON, J.—The petition alleges that "on or about the 15th of October, 1912, defendant received from the Shippers Live Stock Commission Company of National Stockyards, Illinois, the sum of $1245.48, belonging to plaintiff, that on October 21, 1912, plaintiff demanded payment to him of said sum on or before October 25th, 1912; that defendant has failed and refused and still fails and refuses to pay over said sum or any part thereof to plaintiff."

The defense is that defendant bank received the money from the Commission Company as a deposit to the credit of G. C. Wilson, a brother of plaintiff and applied it in payment of an indebtedness of the depositor. A trial in the circuit court resulted in a verdict and judgment for plaintiff. The principal contention of counsel for defendant is that the demurrer to the evidence should have been sustained.

The pertinent facts of the case are as follows: Wood Wilson (plaintiff) and his brother Grover (G. C. Wilson) formerly were partners in the business of buying and shipping hogs but had dissolved partnership and plaintiff had engaged in the real estate business. Grover continued as a hog buyer and shipper

until he became insolvent and lost credit with defendant where he had been transacting his banking business. At the time of the events in controversy he owed defendant more than one thousand dollars which he was unable to pay. Before his failure he had made numerous consignments of hogs to his agent at the stockyards at East St. Louis under standing instructions to pay the proceeds to defendant for his account. After defendant refused him banking accommodations he failed to revoke these instructions and his agent did not know that he had been forced to quit buying and shipping hogs on his own account. His situation was as just described when plaintiff employed him to assist in buying and shipping a carload of hogs to the stockyards at East St. Louis. The evidence of plaintiff tends to show that plaintiff bought and paid for the hogs and that Grover had no interest in them, except that he was to receive compensation for his services from the profits plaintiff might realize from the shipment. The agreement between the brothers provided for the hogs to be consigned to Grover's sometime agent, but in the name and for the account of plaintiff. Part of the hogs purchased pursuant to this agreement were in charge of Grover at Cedar City, in Callaway county, and the remainder were at New Bloomfield, in the possession of plaintiff. The hogs at Cedar City were loaded first and were shipped out by the station agent in the name of Grover who supposed that they were being billed to New Bloomfield and that the car there would be rebilled to East St. Louis in the name of plaintiff. But the shipping contract signed by Grover was for the transportation of the entire load to East St. Louis consigned to his former agent and when the car arrived at New Bloomfield plaintiff, being informed by the agent that it had been billed through to the stock yards, supposed that his brother had shipped in accordance with their agreement and gave no further shipping instructions. The commission

agent received the hogs, sold them on the market and deposited the proceeds, less the commission, in a bank in East St. Louis, to the credit of defendant for the account of Grover, the apparent consignor. On being notified of this deposit, defendant immediately applied the amount on the demand it held against Grover. As soon as plaintiff and Grover learned of this diversion of the proceeds of the hogs, they informed defendant that it was due to a mistake and plaintiff demanded the sum thus deposited. The demand was refused and this suit followed.

We have stated and are considering the facts from the point of view of plaintiff's evidence as we must in solving the question of whether or not that evidence presented issues for the triers of fact to determine.

A general deposit in a bank made by, or for the account of, a depositor, creates the relationship of debtor and creditor between the bank and the depositor and there can be no question of the right of the bank to apply such deposit in payment of an indebtedness of the depositor to the bank without his consent. And further the rule is well settled that money has no earmarks but "passes and may be received from hand to hand without inquiry as to anybody's claim thereto by all who have no notice of its origin." [Bank v. Bank, 102 Mo. App. 357.]

In the case just cited the deposit consisted of money realized by the depositor from cattle he had converted to his own use. In an action by the owner of the cattle against the bank we held that the status of creditor and debtor had been created between the depositor and the bank and that the latter, having no knowledge of any infirmity in its customer's title to the money, was entitled to apply the deposit in extinguishment of a demand it held against him. And so we would hold in this case if the deposit made by the Commission Company for the benefit of Grover had been made with his consent, or had received his implied approval after

he became informed that it had been made. In such state of facts (as we had before us in the case cited) the relationship of banker and depositor—of debtor and creditor—would exist in law and the banker would be entitled to apply the deposit on a debt the depositor owed him regardless of the source of the deposit. [See authorities reviewed in the cited cases; also Butcher v. Butler, 134 Mo. App. 61.]

But the weakness of defendant's position in this case is that the status of banker and depositor and its twin relationship of debtor and creditor were not established between it and its debtor, Grover Wilson. He had no intention of converting the hogs or their proceeds to his own use nor even of shipping them in his name as consignor. By his mistake in supposing that the car would be rebilled from New Bloomfield, apparent authority was given to the Commission Company to deposit the proceeds of the hogs to his credit. but it must be borne in mind that the relation of banker and depositor is contractual and cannot be created except by mutual consent. It is indispensable to the creation of a lawful contract that the minds of the parties shall meet in mutual understanding and agreement.

The case before us cannot be distinguished from that of Mingus v. Bank, 136 Mo. App. 407, recently decided by this court. Speaking of a like mistake we said in that case: "Windle did not make or authorize the deposit with defendant. It was the result of a mistake, which both Windle and plaintiff asked the cashier to correct. . . The defendant, having obtained possession of the funds by mistake and not for value, cannot be said to have any equitable claim to such funds. In other words, its hands are not clean. No injustice is done defendant in compelling it to surrender the deposit, as it parted with nothing in the transaction."

The demurrer to the evidence was properly overruled.

We find the court expressed a proper view of the law of the case in the rulings on the instructions and we do not agree with counsel for defendant that improper comments were made by the trial judge in the presence of the jury. The cause was fairly tried and the judgment is affirmed. All concur.