Syllabus.

# Wytheville.

## FEDERAL RESERVE BANK OF RICHMOND, VA., AND ERIE STEAM SHOVEL COMPANY V. STATE AND CITY BANK AND TRUST COMPANY, ET AL.

June 14, 1928.

Absent, Prentis, P.

Argued and submitted before Judge Holt took his seat.

1. BANKS AND BANKING—*Lien of Bank on Deposits—Application by Bank of Depositor's Funds to Depositor's Indebtedness to Bank—Trust Funds—Case at Bar.*—In the instant case appellant bank forwarded a note to the V. bank for collection and remittance. On December 8th the V. bank presented the note with other items for collection to another bank and received a check in payment for these items. On the same day, December 8th, the V. bank sent its check for the amount of the note to appellant bank. This check was drawn on appellee bank, with which the V. bank had, for many years, carried an ordinary commercial account, and was not received by appellant bank until the afternoon of December 11th. The check which the V. bank received in payment for the note and other items was sent as part of a remittance to appellee bank for collection and credit to the account of the V. bank. This remittance reached appellee bank on the 10th and was collected and credited to the V. bank. On December 11th the V. bank failed and appellee bank applied its balance with it to the indebtedness of the V. bank to appellee bank on December 12th. At the time of this application appellee bank had no knowledge of the existence of the check in favor of appellant bank, nor did it have any until it was presented for payment, and then appellee bank refused payment. Appellant bank filed its petition in a cause wherein a receiver had been appointed for the V. bank, seeking to impress the funds, which had been on deposit with the appellee bank to the credit of the V. bank prior to their application to the indebtedness of the V. bank, with a trust in its favor as against which the appellee bank had no right to apply the balance upon the indebtedness due it by the V. Bank.

*Held:* That the right of the appellee bank was superior to that of the

appellant bank, as the appellee bank had the right to apply the funds deposited by the V. bank to the indebtedness of the V. bank to appellee bank.

2. BANKS AND BANKING—*Lien of Bank on Deposits—Application by Bank of Depositor's Funds to Depositor's Indebtedness to Bank.*—Where a bank has no notice that funds deposited are held by the depositor in trust, it may apply such deposit to the depositor's individual debt to it without becoming liable to the beneficial owner. Unless the bank has notice of the trust character of the fund it has a lien on the funds deposited, or rather, more properly speaking, a right of set off of any debt due it by the depositor against such deposit.

3. BANKS AND BANKING—*Relationship between Bank and Depositor that of Debtor and Creditor.*—The deposit of funds in a bank by a customer creates the relation of debtor and creditor between them, and the money immediately becomes the property of the bank.

4. MONEY—*Money has no Earmarks—Money Passes without Inquiry.*—Money has no earmarks, but passes and may be received from hand to hand without inquiry as to anybody's claim thereto by all who have no notice of its origin.

5. BANKS AND BANKING—*Deposits—Deposits Part of General Assets of Bank.*—Money deposited in a bank becomes part of its general assets, and the bank simply becomes a debtor of the depositor. The absolute title to the money by the mere act of deposit passes to the bank.

6. BANKS AND BANKING—*Lien of Bank on Deposits—Application by Bank of Depositor's Funds to Depositor's Indebtedness to Bank—Indebtedness Not Yet Due—Case at Bar.*—In the instant case appellee bank refused payment of a check drawn by a depositor in favor of appellant bank. Between the time of the drawing of the check and its presentation for payment, the depositor had become insolvent and appellee bank had applied depositor's balance with it to notes of the depositor to appellee bank. The notes were not actually due but upon the insolvency of the depositor its obligation to appellee bank became due, and appellee bank had a right to treat them as past due obligations.

Appeal from a decree of the Circuit Court of Halifax county. Decree for defendant. Petitioner appeals.

*Affirmed.*

The opinion states the case.

*Maxwell G. Wallace*, for the appellants.

*Leake & Buford* and *John Martin*, for the appellees.

CHICHESTER, J., delivered the opinion of the court.

[1] This cause was submitted to the trial court upon an agreed statement of facts, the essential portions of which are set out in the petition for an appeal and the brief of appellees, substantially as follows: On November 26, 1923, the Federal Reserve Bank of Richmond, Va., forwarded to the bank of Virgilina at Halifax, Va., for collection and remittance, a certain promissory note made by J. J. Battershill & Son, of Virgilina, which belonged to the Erie Steam Shovel Company. The note was for the principal sum of $875.00 and interest amounting to $39.37, a total of $914.37, and matured on December 6, 1923. On December 8, 1923, the Bank of Virgilina presented several items, including the above note, to the Citizens Bank of Virgilina for payment and received payment for the items presented in the form of a check of the Citizens Bank for $922.45, drawn upon the First National Bank of Richmond. On the same day, December 8th, the Virgilina Bank drew and sent its check, in favor of the Federal Reserve Bank, for $914.37, the amount of the above mentioned note, principal and interest. This check was not received by the Federal Reserve Bank until the afternoon of December 11th. The check was drawn upon the State and City Bank and Trust Company with which the Virgilina Bank had, for many years, carried an ordinary commercial checking account. On the morning of the day on which the check in favor of the Federal

Reserve Bank was drawn and sent the Virgilina Bank had to its credit with the State and City Bank a balance of $11,564.32 and at the close of business on that day a balance of $11,554.27, according to the books of the State and City Bank. When the check in favor of the Federal Reserve Bank was drawn and forwarded the Virgilina Bank credited, on its books, the State and City Bank with the amount of that check, namely, $914.37.

On a date, not appearing from the record, the above mentioned check of the Citizens Bank to the Bank of Virgilina for $922.45, which the Virgilina Bank had received in payment of the $914.37 note and of several other smaller items, presented to the Citizens Bank for payment at the same time, was sent as part of a remittance of nine items, checks or drafts, drawn upon seven different cities or towns, and aggregating $1,785.-88, to the State and City Bank for collection and credit to the account of the Virgilina Bank. This remittance reached the State and City Bank on December 10, 1923, and on the same day various other items were received by the State and City Bank from the Virgilina Bank for collection and credit, the aggregate receipts and deposit of that date amounting to $9,777.61. On the day of the receipt of such deposit, namely, December 10, 1923, the State and City Bank presented the check of the Citizens Bank for $922.45 to the First National Bank of Richmond, upon which it was drawn, and received payment thereof. The amount of the remittance from the Virgilina Bank to the State and City Bank was credited to the account of the Virgilina Bank upon its receipt.

The note due the Steam Shovel Company had been forwarded by the Federal Reserve Bank to the Bank of Virgilina pursuant to an agreement whereby the Bank of Virgilina had undertaken to collect for the

Reserve Bank notes and other negotiable instruments payable in or near Virgilina.   Under that agreement collection remittances from the Bank of Virgilina to the Reserve Bank were usually made by means of a draft drawn by the Bank of Virgilina upon some bank in the city of Richmond or other reserve city in which the Bank of Virgilina had funds on deposit.

The Virgilina Bank having a credit balance of $11,-564.32 as of the morning of December 8th made the following deposits and withdrawals from that period until the close of business on December 11th, namely, on December 8th it deposited $563.18 and discounted its $10,000 note for the net sum of $9,945.33.   On the same day it paid its $10,000 note maturing on that day and checked out $519.54; on December 10, 1923, it deposited in the State and City Bank $9,777.61 (which deposit included the check of the Citizens Bank for $922.45), and on the same day it checked out $8,431.92. On December 11th it deposited $845.24 and on the same day checked out $11,500.07.   This left on the books of the State and City Bank a credit balance to the account of the Virgilina Bank of $2,245.15.   These details are given to show the usual course of dealing between these banks.   They are important in view of the character of the controversy here.

On December 11th the Bank of Virgilina was closed and its operations suspended, and thereafter the State and City Bank and Trust Company applied the above balance of $2,245.15 upon the indebtedness of the Virgilina Bank to it, which indebtedness consisted of two notes, one for $15,000 maturing December 27, 1923, and the other for $10,000 maturing January 7, 1924.

On December 12, 1923, at the time of the application of this balance to the notes above mentioned, the State

and City Bank had no knowledge of the existence of the check in favor of the Federal Reserve Bank for $914.37, nor did it have any until it was presented for payment, and then the State and City Bank refused payment thereof.

Thereafter the Federal Reserve Bank filed its petition in the cause then pending in the Circuit Court of Halifax county, wherein a receiver had been appointed for the Virgilina Bank, seeking to impress the funds, which had been on deposit with the State and City Bank to the credit of the Virgilina Bank prior to their application to the notes held by the State and City Bank, with a trust in its favor as against which the State and City Bank had no right to apply the balance upon the indebtedness due it by the Bank of Virgilina.

The commissioner in chancery, to whom the question in controversy was referred, reported in favor of the claim of the Federal Reserve Bank, exceptions were duly taken and were sustained by the court, and thereupon a decree was entered establishing the right of the State and City Bank and Trust Company to make the application. From this decree this appeal has been taken.

The issue, therefore, before this court is narrow and well defined and consists only of the question whether, upon the facts shown in this record, the State and City Bank, with which the Virgilina Bank carried an ordinary commercial checking account, had the right to apply to its notes so much of the balance of the Virgilina Bank as equalled that portion of the $922.45 check of the Citizens Bank which represented the proceeds of the note of the Federal Reserve Bank, viz., $914.37.

It may be said that the controversy here presents a case of a conflict of equities as to the $914.37, between

the Federal Reserve Bank (acting of course as agent for the Erie Steam Shovel Company) on the one side, and the State and City Bank and Trust Company on the other. The question is narrow and well defined as has been pointed out, but its difficulty consists in determining which has the superior equity.

The equity of the Federal Reserve Bank arises, it is said, out of the fact that the fund of $914.37 collected by the Bank of Virgilina for it and sent along with other funds, for deposit to the latter bank's credit, to the State and City Bank, as set out heretofore, was impressed with a trust, which made the right of the Federal Bank to the fund superior to that of the State and City Bank. The equity of the State and City Bank arises out of the alleged right of a bank generally, without knowledge of the fiduciary character of funds deposited with it, to apply them to obligations due by the depositor to the bank.

There are two lines of authority, apparently as clearly defined as the issue here, one of which is in accord with the contention of the appellants, and the other of which is in accord with the contention of the appellee. These authorities have been presented in impressive array by the learned counsel for both contestants and the case was ably argued orally.

The authorities relied on by the appellant are to the effect that where funds, impressed with a trust, are deposited in a bank to individual credit and without earmark to indicate they are trust funds, and the bank in which the deposit is made has no notice of the trust character of the funds, yet, before the bank can apply the funds to any indebtedness due by the depositor to the bank, so as to defeat the claim of the real owners of the fund, it must, in addition, have given credit to

the depositor or must have suffered balances to remain in its hands on account of the receipt of the deposit.

[2, 3] The authorities relied on by the appellees are to the effect that where a bank has no notice that funds deposited are held by the depositor in trust, it may apply such deposit to the depositor's individual debt to it without becoming liable to the beneficial owner.

It is conceded, in the instant case, that if the rule promulgated by the first line of authorities is to prevail, the appellants are entitled to recover, but if the rule of the second line prevails here, the appellee (State and City Bank), is entitled to retain the fund as an offset to the indebtedness due it by the Bank of Virgilina, because it is conceded that the State and City Bank had no notice or knowledge of the trust character of the funds.

We think, on principle, that this latter line of cases has evolved the better rule. It is consistent with the long established general doctrine that the deposit of funds in a bank by a customer creates the relation of debtor and creditor between them, and that the money immediately becomes the property of the bank. Thus in *Pennington* v. *Bank*, 114 Va. 674, 675, 77 S. E. 455, 456 (45 L. R. A. [N. S.] 781), it was held: "The general doctrine is settled that the collection of a draft by a bank for a customer in the ordinary course of business and placed to the customer's credit amounts to a general deposit by the latter, and creates the relation of debtor and creditor between them. In such case the customer or depositor has the right to demand of the bank an equivalent amount of money, but not the specific coins or other currency deposited."

The same principle is enunciated in *Arnold* v. *Bank*, 184 Cal. 632, 194 Pac. 1012, 13 A. L. R., page 322, where it was said:" It is well settled here that the

relation between a general depositor and the bank in which his deposit is made is simply that of debtor and creditor. The moneys deposited immediately become the property of the bank, and the latter becomes debtor of the depositor for the amount of the deposit, the same being payable on demand and on checks of the creditor."

Thus in *Ford* v. *Thornton*, 3 Leigh (30 Va.) 695, where one Gregory died insolvent with a bank balance and also indebted to the bank upon his note, this court said: "According to my view of the case, no part of Gregory's deposit in bank constituted, upon his death, general assets of the estate, except the excess above what was sufficient to liquidate the note of Gregory due to the bank. The bank, in fact, was only a debtor for the difference.

The relationship of debtor and creditor with all its incidents, is fully recognized in the decision relied upon by the appellee, while the rule established by those authorities relied on by the appellant ignores, and is inconsistent with, this relationship. This is apparent from a perusal of the case of *Bank of Metropolis* v. *New England Bank*, 6 Howard 212, 12 L. Ed. 409, which is the basis of the decisions relied on by appellants. In that case, which was twice before the supreme court, Chief Justice Taney, who wrote the opinion for the court, formulated three instructions which he declared to be the law in such cases for the guidance of the trial court, which seems to have misconstrued the first opinion handed down in the case. These instructions are:

"1. If, upon the whole evidence before them, the jury should find that the Bank of Metropolis at the time of the mutual dealings between them, had notice that the Commonwealth Bank had no interest in the

bills and notes in question, and that it transmitted them for collection merely as agent, then the Bank of the Metropolis was not entitled to retain against the New England Bank for the general balance of the account with the Commonwealth Bank.

"2. And if the Bank of the Metropolis had not notice that the Commonwealth Bank was merely an agent, but regarded and treated it as the owner of the paper transmitted, yet the Bank of the Metropolis is not entitled to retain against the real owners, unless credit was given to the Commonwealth Bank, or balances suffered to remain in its hands to be met by the negotiable paper transmitted or expected to be transmitted in the usual course of the dealings between the two banks.

"3. But if the jury found that, in the dealings mentioned in the testimony, the Bank of the Metropolis regarded and treated the Commonwealth Bank as the owner of the negotiable paper which it transmitted for collection, and had no notice to the contrary, and upon the credit of such remittances made or anticipated in the usual course of dealing between them balances were from time to time suffered to remain in the hands of the Commonwealth Bank, to be met by the proceeds of such negotiable paper, then the plaintiff in error is entitled to retain against the defendant in error for the balance of account due from the Commonwealth Bank."

This leading case is quoted by practically all of the cases which hold that the bank in which the deposit was made must have given some credit to the depositing bank on account of the deposit or suffered balance to remain on its hands on account of the receipt of the deposit, in addition to the requirement that the

bank in which the funds are deposited must have had no notice of their trust character.

There is undoubtedly a wealth of authority following this decision, and many of the cases are well reasoned. An especially strong case is that of *Shotwell* v. *Sioux Falls Savings Bank*, 34 S. D. 109, 147 N. W. 288, L. R. A. 1915-A, page 715, but as heretofore stated all these cases ignore the fundamental principle obtaining in the relationship of debtor and creditor. The weight of authority appears to be largely with those cases which hold that unless the bank had notice of the trust character of the fund it has a lien on the funds deposited, or rather, more properly speaking, a right of set off of any debt due it by the depositor against such deposit.

In First Morse on Banks and Banking, 5th Edition, page 618, this is said: "Neither shall the banker have his lien upon nonnegotiable property subject to a trust, and improperly left with him or pledged to him by the trustee, though the bank is without notice of the trust; unless, indeed, the *cestui qui* trust shall have done some act or been guilty of some negligence such as to deprive him of his counter rights. And a deposit in the name of A. as agent or trustee, or in the name of A. if the bank has notice that it belongs to another, cannot be applied by the bank to A.'s debt to itself, nor will it have any lien on a fiduciary deposit. If the trust property is traceable into the debt now due from the bank to the depositor the true owner can claim the fund.

"But if the trust properly consists of bills or notes, payable to bearer, or other property transferable by delivery merely, and be not earmarked as trust property, if the customer deposit them as if they were his own, and the banker receives them in due course,

*bona fide* and with no notice of the trust, he shall hold them under his lien.

"In the case of money, or any negotiable securities, it has been frequently held that where the bank has no notice that they do not belong to the depositor, it acquires a valid lien for his indebtedness."

In 7 C. J. at page 659 the rule is stated thus: "Where a bank has no notice that funds deposited are held by the depositor in trust, it may apply such deposit to the depositor's debt without becoming liable to the beneficial owner."

In *Milhouse* v. *Citizens' Bank of Valdosta*, 14 Ga. App. 240, 80 S. E. 703, the syllabus by the court says: "Nor would the bank's right thus to apply the fund" (to a debt) "be defeated merely because before the application was made a check drawn by the depositor had been presented for payment, which check was given for money previously collected by the depositor for the payee. The right to make the application exists whether the indebtedness of the depositor be that of a principal, or upon an obligation in which he is only secondarily liable."

[4] Again in *Wilson* v. *Farmers' First National Bank* (1914), 176 Mo. App. 73, 162 S. W. 1047, the Supreme Court of Missouri said: "A general deposit in a bank made by, or for the account of, a depositor creates the relationship of debtor and creditor between the bank and the depositor, and there can be no question of the right of the bank to apply such deposit in payment of an indebtedness of the depositor to the bank without his consent. And, further, the rule is well settled that money has no earmarks, but 'passes and may be received from hand to hand without inquiry as to anybody's claim thereto by all who have no notice of its

origin.' *Bank* v. *Bank*, 102 Mo. App. 357, 76 S. W. 489.

"In the case just cited the deposit consisted of money realized by the depositor from cattle he had converted to his own use. In an action by the owner of the cattle against the bank, we held that the status of creditor and debtor had been created between the depositor and the bank, and that the latter, having no knowledge of any infirmity in its customer's title to the money, was entitled to apply the deposit in extinguishment of a demand it held against him. And so we would hold in this case, if the deposit made by the commission company for the benefit of Grover had been made with his consent, or had received his implied approval after he became informed that it had been made. In such state of facts (as we had before us in the case cited) the relationship of banker and depositor—of debtor and creditor—would exist in law, and the banker would be entitled to apply the deposit on a debt the depositor owed him regardless of the source of the deposit. See authorities reviewed in the cited cases; also *Butcher* v. *Butler*, 134 Mo. App. 61, 114 S. W. 564." (Opn. 176 Mo. App. 76, 162 S. W. pages 1048–9.)

In *McStay Supply Company* v. *John S. Cook and Company* (1913), 35 Nev. 284, 132 Pac. 545, the Supreme Court of Nevada, after a thorough examination of the authorities, lays down the following principles affecting the relationship of a bank and its depositors as established by the overwhelming weight of authority:

"An examination of the authorities will disclose that as a matter of law the following principles affecting the relations of a bank and its depositors as may be involved in this case are established by an overwhelming weight of authority:

[5] "1. The relation between a bank and its de-positors is that of debtor and creditor. There can be no doubt of this proposition. Money deposited in a bank becomes part of its general assets, and the bank simply becomes a debtor of the depositor. The absolute title to the money by the mere act of deposit passes to the bank. * * *

"2. The bank has a lien upon all funds belonging to depositors deposited for any indebtedness owing to it by the depositors. * * *

"3. If a principal permits his agent to deposit money in the bank without any notice to the bank that the money belongs to the principal, and the agent checks out the money or subjects it to a lien, on account of any borrowing of money, then the principal and not the bank is the loser." (Citing cases from England, U. S. Supreme Court, Mass., N. Y., Neb., Mo., Iowa, Ga., Kansas, Colo., Pa., and Minn.)

"4. If the principal neglects to give a notice until the bank's lien has attached, then a notice comes too late, and the bank has a right to apply the money to satisfy its lien. * * * But where, as in the pres-ent case, trust funds or securities belonging to others are deposited by a depositor with a bank, and the bank has knowledge of the fact that these funds do not belong to the depositor and that he is merely acting as a collector or agent of another, the bank has no right whatever to apply said funds or securities to any in-debtedness of the depositor, nor can the bank acquire any lien upon such funds or securities so deposited by a depositor who may be indebted to the bank."

See also *Sparrow* v. *State Exchange Bank*, 103 Mo. App. 338, 77 S. W. 168; *Wood* v. *Boylston National Bank*, 129 Mass. 358, 37 Am. Rep. 366; *Kimmel* v...

*Bean,* 68 Kan. 598, 75 Pac. 1118, 64 L. R. A. 785, 104 Am. St. Rep. 415.

The case of *Kimmel* v. *Bean, supra,* contains a very elaborate discussion of the proposition under consideration. In that opinion, among other things, the following quotations are made: "The rule has been settled by a long line of cases, that money obtained by fraud or felony cannot be followed by the true owner into the hands of one who has received it *bona fide* and for a valuable consideration in due course of business. * * *

"It is said that the case is to be governed by the doctrine established in this State that an antecedent debt is not such a consideration as will cut off the equities of third parties in respect of negotiable securities obtained by fraud. But no case has been referred to where this doctrine has been applied to money received in good faith in payment of a debt. It is absolutely necessary for practical business transactions that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the payor. Money has no earmark. The purchaser of a chattel or a chose in action may, by inquiry in most cases, ascertain the right of the person from whom he takes the title. But it is generally impracticable to trace the source from which the possessor of money has derived it. It would introduce great confusion into commercial dealings if the creditor who receives money in payment of a debt is subject to the risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely, from considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests the title in the holder as to

third persons dealing with him and receiving it in due course of business and in good faith upon a valid consideration. If the consideration is good as between the parties, it is good as to all the world." *Stephens* v. *Board of Education,* 79 N. Y. 183, 186, 187, 35 Am. Rep. 511.

"If a trustee or other fiduciary person, in violation of his own duty, uses trust money to pay an antecedent debt of his own to a creditor who has no notice of the breach of trust, or that the money is subject to the trust, in such a manner that the money is received as a general payment, and not as a distinct and separate fund, then the money becomes free from the trust, and cannot be followed by the beneficiary into the hands of the creditor, although, in general, an antecedent debt does not constitute a valuable consideration." Pom. Ed. Jr., 2nd ed., section 1048.

In the note, page 424, of 111 Am. St. Rep., in discussing the bankers lien "On General Deposits" where the equities of third parties are involved the annotator says: "Where trust funds are deposited with a bank, and the bank has notice of their trust character, it has no right to appropriate them to the payment of the individual debt of the depositor due from him to it. * * * But if the bank has no notice that the deposit made by a trustee is not his private property, it may, according to the weight of authority, apply the fund to the payment of the depositor's indebtedness to it. * * * Where an agent or factor has deposited his principal's money in a bank, and the bank is chargeable with notice of the true ownership of the funds, it is not entitled to apply such funds to the payment of the individual debt of the agent owing to it. * * * But a bank cannot be held to account to the owner of a fund which has been deposited by an agent

in his own name and applied on his overdraft, if the bank has no knowledge of the agency. * * * "

Again on page 419 of the same note, under the caption "On General Deposits—Lien in General," the annotator says: "It is a well settled principle of the law merchant that a bank, without an express agreement therefor, has a general lien on the moneys, funds and securities of a customer coming into its possession in the course of their dealings, for any balance of general account, or other indebtedness due the bank from the customer. This lien does not arise where there is a special agreement or a particular mode of dealing, or other circumstances inconsistent with such a general lien; but ordinarily it attaches to the moneys and securities deposited in the usual course of business, not only against the depositor, but against the unknown equities of all others in interest."

In the note of *Arnold* v. *San Ramon Valley Bank*, reported in 13 A. L. R. page 327, in a note under the caption "Effect of Lack of Knowledge of Fiduciary Character of Funds—General Rule Permitting Application," the annotator says: "The decided weight of authority is to the effect that where the bank, in which funds in which third persons have an interest are deposited in the individual name of the depositor, has neither actual knowledge, nor notice of facts sufficient to put it upon enquiry, as to the true character of the deposit, it may apply the deposit to the individual debt of the depositor."

There are three decisions of this court referred to by appellant, viz: *Federal Reserve Bank* v. *Peter*, 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742; *Federal Reserve Bank* v. *Bohannan,* 141 Va. 285, 127 S. E. 161, and *Webb, Rec'r* v. *O'Geary,* 145 Va. 356, 133 S. E. 568. There is nothing inconsistent in any of these cases with the

position we have taken in the instant case. The case of *Federal Reserve Bank* v. *Bohannan, supra,* has some application to the facts of the instant case and is entirely consistent with our conclusions here.

Bohannan had been appointed receiver of the Bank of Disputanta on January 23, 1922. On January 20th the Federal Reserve Bank had sent to the Disputanta Bank for collection and immediate remittance certain checks, aggregating $1,416.25. The checks were drawn upon the Disputanta Bank which carried an account with the Virginia National Bank, of Petersburg, Virginia. The Disputanta Bank received these checks on January 21st, cancelled them, charged them to the accounts of the drawers and remitted to the Federal Reserve Bank by its exchange draft on the Virginia Bank, which was received on January 23rd and sent to the Virginia Bank for payment. The receivership had intervened, however, and the Virginia Bank declined payment of the draft.

When the exchange draft was presented to the Virginia Bank for payment the account of the Disputanta Bank showed a credit balance of $7,340.41, but the Virginia Bank held a note of the Disputanta Bank, not due, for $25,000.00 and held collateral security therefor to the amount of $52,199.63. The Virginia Bank appropriated the balance of $7,340.41 and credited it upon the note.

This court in disposing of the controversy said: "In the instant case the exchange draft was drawn on funds on which there was a preferred lien which was enforced, thus leaving nothing with which to pay said draft."

[6] Upon the whole case we think that the Federal Reserve Bank had no equity, to the extent of $914.37, in the account of the Virgilina Bank on deposit in the

State and City Bank which was superior to the equity of the State and City Bank therein. The Virgilina Bank did not seek to segregate the proceeds of this collection but followed the usual course of dealing between the two institutions and made the remittance by means of a draft upon "such bank in the city of Richmond   *   *   *   in which the bank of Virgilina had funds on deposit." When the Federal Reserve Bank presented its check from the Virgilina Bank these funds had not only been blended with the funds credited to the Virgilina Bank in the State and City Bank, but they had been credited on the notes then due by the Virgilina Bank to the State and City Bank. It is true the notes were not actually due but it is conceded that upon the insolvency of the Virgilina Bank its obligations to the State and City Bank became due, and the State and City Bank had a right to treat them as past due obligations.

Our opinion therefore is that the decree of the Circuit Court of Halifax county should be affirmed.

*Affirmed.*