## CIRCUIT COURT OF THE CITY OF RICHMOND

Allan W. Smith

v.

Ronald C. Akers et al.

October 12, 1990

Case No. LR-2775-3

By JUDGE RANDALL G. JOHNSON

This case is before the court to determine the sufficiency of a garnishee's answer to a garnishment summons. At issue is whether funds held by the garnishee are reachable by the judgment creditor notwithstanding the garnishee's claim that it has a perfected security interest in, as well as a common law and contractual right to set-off against, those funds.

For purposes of this opinion, the relevant facts[1] are that on September 9, 1988, Premnet Consulting, Ltd., one of the judgment debtors herein, obtained a revolving line of credit in the amount of $75,000 from Signet Bank, the garnishee. The line of credit was evidenced by a letter agreement between Signet and Premnet, and by a note executed by Premnet. As one of the conditions for obtaining the line of credit, Premnet was required to maintain its commercial checking account with Signet and was also required

---

[1] To the extent any facts are in dispute, the facts as stated in this opinion constitute the court's findings with regard to such disputes.

to grant Signet a lien on all of Premnet's assets. A security agreement, executed by Premnet and Signet on September 9, 1988, gave to Signet a "security interest in all accounts, inventory, equipment, fixtures, general intangibles, instruments, documents and chattel paper . . . ." Financing statements (UCC-1s) were also duly executed by Premnet and filed with the State Corporation Commission and the Clerk of the Circuit Court of Henrico County, where Premnet's principal place of business was located.

On August 31, 1989, the line of credit expired. At that time, the maximum amount obtainable under the line, $75,000, had been borrowed and was outstanding. A new note for $75,000 was therefore signed by Premnet, providing for repayment to Signet of the outstanding balance in twenty-five monthly payments.

On October 23, 1989, the judgment creditor obtained a valid judgment against Premnet and others in the amount of $23,208.30. On April 13, 1990, the judgment creditor caused a garnishment summons to be served on Signet. At that time, the unpaid principal balance of Premnet's note to Signet was $41,000. An unspecified amount of interest was also due. Only $13,614.87 was in Premnet's account. It is the judgment creditor's position that such amount is his. Naturally, Signet does not agree.

Signet first argues that the judgment creditor is not entitled to the funds in Premnet's account because Signet has a perfected security interest in such funds under Article 9 of the Uniform Commercial Code. This is true, according to Signet, because (1) financing statements were filed at the time the line of credit was established, and (2) those financing statements were never formally terminated. The court rejects this argument.

While it is true that Signet filed financing statements in connection with the $75,000 line of credit to Premnet, that line of credit, as well as the outstanding balance thereunder, were extinguished on August 31, 1989. On that day, Premnet signed a *new* note for $75,000. By custom and law, that new note represented a new loan to Premnet for an *additional* $75,000, said $75,000 being immediately used by Premnet to pay off the entire balance due under the *old* loan, the line of credit. The old loan no longer existed. Thus, any collateral securing the old loan was

immediately released, and any financing statements pertaining to that collateral were rendered meaningless. Indeed, it is axiomatic that collateral is collateral only if there is a debt. Once the debt is extinguished, there can be no collateral. And if there is no collateral, there can be no security interest, perfected or otherwise. The failure to file a termination statement under the Uniform Commercial Code makes no difference. The financing statement, whether or not *formally* terminated, simply has no meaning once the underlying debt is gone. Here, the underlying debt, the line of credit, was gone as of August 31, 1989. Since no financing statements were filed in connection with the new note, Signet did not have a perfected security interest under the UCC.

Notwithstanding the above holding, the court will still rule that the judgment debtor is not entitled to the funds in Premnet's account with Signet. This is so because of the court's recognition of a contractual and common-law right of set-off in the bank. Contractually, the note signed by Premnet provides:

> [A]s security for the full and timely payment of the indebtedness evidenced by this Note, the Maker hereby grants to the Holder a security interest in all monies, bank deposits, or credits held by the Holder for or owed by the Holder to the Maker.[2]

[2] There is a factual dispute between the parties as to whether the August 31, 1989, note was "secured" or "unsecured." Such dispute revolves around two preprinted boxes on the note, one labeled "Unsecured," and the other labeled "Secured." While the "Secured" box has three capital "Xs" typed in and around it, that box and the Xs appear to have been crossed out by a large handwritten X, and the "Unsecured" box is marked with a handwritten check mark (/) which is initialled by Signet's loan officer. Naturally, the judgment creditor argues that it is the handwritten check mark that controls, and that the note is unsecured. Signet takes the opposite position. The Court feels that this is a non-issue, since immediately preceding the language quoted above concerning the Holder's security interest in all monies, etc., the note specifically states that certain terms, including the security interest in all monies, etc., apply no matter which box is checked. Indeed, that same language makes it clear that checking the "Unsecured" box merely renders some of the provisions on the reverse side of the

Moreover, Virginia has long recognized a bank's lien on the funds of its depositors:

> The bank has a lien upon all funds belonging to depositors deposited for any indebtedness owing to it by the depositors. *Federal Reserve Bank v. State Bank*, 150 Va. 423, 436, 143 S.E. 697 (1928).

From the above language itself, it is clear that the bank's lien commences as soon as two events occur: first, there must be a depositor; and second, the depositor must be indebted to the bank. Once those two things co-exist, the bank's lien attaches. Here, such lien attached on August 31, 1989, when Premnet became indebted to Signet in the amount of $75,000. From that date forward, Signet had a lien on all monies on deposit from Premnet in an amount not exceeding the outstanding balance of Premnet's indebtedness.

On the other hand, the judgment creditor's lien, under Va. Code § 8.01-501, did not commence until the garnishment summons was delivered to the sheriff to be served on Signet. Since judgment was not entered until October 23, 1989, it is clear that Signet's lien predated the lien of the judgment debtor.

Finally, it is clear that the majority rule, recognizing a right of set-off in a garnishee bank, favors Signet, and that such majority rule is in harmony with Virginia's rule that a bank has a lien on its depositors' funds. *See, e.g.*, *Holloway v. First Nat. Bank*, 45 Idaho 746, 752, 265 P. 699 (1928) ("[A] garnishee bank has the right to set off against the indebtedness owing from it to the depositor, a defendant in an attachment suit, any indebtedness due from him to it and the lien of the garnishment reaches only the excess."); *Farmers' State Bank v. Van Houten*, 219 N.W. 206, 207 (S.D. 1928) ("The right of James River Bank to set off the $69 on deposit against

note inapplicable. Accordingly, for our purposes here, it matters not which box is checked. For whatever it is worth, however, the court finds from the evidence that the parties intended that the "Unsecured" box be checked.

the amount due it from defendant on his past-due note is superior to the garnishment."); *Marrison v. Hogue*, 95 N.E.2d 15, 17 (Mun. Ct. Ohio 1950) ("The Bank has the right of set-off at all times . . . . Service of process in garnishment does not defeat or take away the right, although the right is not asserted and the bookkeeping act of set-off not performed until after service of garnishment process."); *Baltimore & Associates v. Municipal Escrow & Title Co.*, 625 F. Supp. 1271, 1273 (D. D.C. 1985) ("Riggs [Bank] argues that it still had the right to exercise a set-off against the funds in METCO's account after the writ of attachment was served on June 20, 1984. This is undoubtedly true."); *Killette v. Raemell's Sewing Apparel, Inc.*, 377 S.E.2d 73, 74 (N.C. App. 1989) ("Right [of set-off] may be exercised 'at any time after the debt becomes due,' [citations omitted] and 'any time' . . . includes when a bank is served with a notice of levy or attachment.").[3]

Because the court holds that Signet has a right of set-off and that such right is superior to the judgment creditor's judgment lien, and since the funds on deposit with Signet are not sufficient to satisfy Signet's claim, the judgment creditor is entitled to no part of those funds.

---

[3] As several of the above cases make clear, the right of set-off continues even after a writ of attachment or garnishment is served and whether or not the bank has formally "called" the default. Indeed, as the Federal Reserve Bank case implies, it is the DEBT, not the default, which creates the lien giving rise to the right of set-off. Accordingly, the judgment creditor's argument that the bank's right of set-off was lost because of the absence of a default notice is rejected.